**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Richard David PEDOTA, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2012.

Filed Feb. 20, 2013.

Reargument Denied May 1, 2013.

Steve N. Goudsouzian, Easton, for appellant.

John M. Morganelli, District Attorney, Easton, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and ALLEN, J.

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Northampton County, which, sitting as finder of fact in Appellant's nonjury trial, considered a stipulated record and closing arguments before convicting Appellant of Homicide by Vehicle, 75 Pa.C.S.A. § 3732(a); Involuntary Manslaughter, 18 Pa.C.S.A. § 2504(a); Driving on Roadways Laned for Traffic, 75 Pa.C.S.A. § 3309(1); and Careless Driving, 75 Pa.C.S.A. § 3714(a). We affirm.

Appellant's convictions stem from a traffic accident that occurred on the morning of September 9, 2010, when Appellant's tractor-trailer drifted from a designated lane of travel on Interstate 78 in Easton, Pennsylvania and struck another tractor-trailer lawfully parked on the side of the highway, killing its driver, Mario Chacon, who was outside the vehicle at the time. Principal among the stipulated facts submitted for trial was that Appellant had fallen asleep or blacked out for unknown reasons at the time of the accident. Following jurisprudence, see *infra*, that criminal responsibility may flow from a driver's deadly disregard of familiar physical warning signs of imminent sleep, the trial court found that Appellant recklessly continued to drive his tractor-trailer on the high speed interstate with indifference to human life. Accordingly, the court entered a verdict of guilty on all charges and sentenced him to two to four years' incarceration, followed by three years' probation on the charge of Homicide by Vehicle.[1]

In this appeal, Appellant assails the court's treatment of the stipulated facts. Specifically, he argues that the court erred when it equated "falling asleep" with "blacking out" because the former typically involves a gradual event preceded by familiar signs while the latter is commonly understood as a sudden occurrence without warning. Given the distinction, Appellant argues, his stipulation to an alternate and equally likely possibility that he blacked out for unknown reasons left the Commonwealth with insufficient proof of the *mens rea* element of the crimes. That is, because he just as likely blacked out suddenly as fell asleep gradually under the stipulated facts, evidence failed to establish his guilt beyond a reasonable doubt. More-

over, to the trial court's determination that, given the record, it was Appellant's burden to produce evidence that his was the unusual case where sleep came completely unannounced, Appellant charges the court with impermissibly shifting the burden of proof onto him. Finally, in failing to appreciate a distinction in the stipulation and instead relying on what it called the "undisputed fact" that he fell asleep at the wheel, Appellant contends the trial court effectively based its verdict on a fact not of record.

Our standard of review for challenges to the sufficiency of the evidence is well established.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law,

1. The charge of involuntary manslaughter merged with homicide by vehicle for purposes of sentencing.

no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer,* 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy,* 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer,* 876 A.2d at 1032.

*Commonwealth v. Lamonda,* 52 A.3d 365, 368 (Pa.Super.2012).

To determine the sufficiency of evidence offered in support of the charges of Homicide by Vehicle and Involuntary Manslaughter, we first review each statute. Pursuant to that Section 3732(a) of the Vehicle Code,

> [a]ny person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a). To sustain a conviction under Section 3732(a), therefore, the Commonwealth was required to prove that Appellant caused the death of Mario Chacon by acting recklessly or with gross negligence, while violating a law or municipal ordinance under the conditions set forth in the statute. 75 Pa.C.S.A. § 3732(a). Similarly, pursuant to Section 2504(a) of the Crimes Code,

> [a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a). The language of each statute thus reflects the well-settled principle that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act. . . ." 18 Pa. Cons.Stat.Ann. § 301(a). *See Commonwealth v. Fierst,* 423 Pa.Super. 232, 620 A.2d 1196, 1202 (1993), *appeal denied,* 584 Pa. 672, 880 A.2d 1236 (2005) (recognizing "Pennsylvania Crimes Code does not impose criminal liability on a person for an involuntary act."). *See also Commonwealth v. Lamonda,* 52 A.3d 365, 369 (Pa.Super.2012).

It follows, therefore, that falling unconscious at the wheel without warning and opportunity to stop one's vehicle safely would fail to satisfy the above-stated requirement of a voluntary act. Nevertheless, the question has arisen as to whether the burden rests with the Commonwealth to prove, or with the defendant to disprove, the existence of such warnings and opportunities. Our jurisprudence has answered by placing the burden on the driver. Specifically, in failing to discharge this burden, a driver may be found to have recklessly or with gross negligence disregarded classic and universally familiar

signs of imminent sleep so as to have committed the volitional act requisite to the above offenses.

In *Commonwealth v. Huggins,* 575 Pa. 395, 836 A.2d 862 (2003), the Pennsylvania Supreme Court held that the Commonwealth established a *prima facie* case of involuntary manslaughter on evidence that a driver of a speeding 15–passenger van, overloaded with twenty-one children and three adults, fell asleep, causing a collision on the highway and the death of two children. The Court reasoned:

> The question for review becomes whether the Commonwealth produced *prima facie* evidence that, in operating the van in the circumstances that preceded the collision that resulted in the death of the two children, appellee disregarded a substantial and unjustifiable risk that the direct result of his behavior would be the death of one or more of his passengers or another person on the highway. We hold that the evidence was sufficient to support a *prima facie* finding of this element.

> A motor vehicle can be a dangerous instrumentality. Driving is a correspondingly heavily regulated privilege, both as to licensure and the rules of the road, the regulation being a necessary concomitant of the dangers to self and others inherent in driving. The danger increases with the speed at which a vehicle is operated, since speed both reduces reaction times and heightens the consequences of any collision. The danger also may increase if other safety measures are ignored-whether those measures involve vehicle maintenance, internal safety features such as seating capacity or restraints, or the rules of the road. No driver can get behind the wheel without an acute awareness of the "responsible post of duty," *Bernosky,* 38 A.2d at 36, he is assuming.

> Losing consciousness at the wheel differs in kind from the acts of momentary inadvertence or inattention that often occasion car accidents and are commonly encompassed in the term "negligence" in the tort arena. A momentary lapse leaves the driver unprepared for the unexpected or extraordinary. A loss of consciousness, on the other hand, leaves one totally unprepared even for the ordinary requirements for safe driving. Drivers have an unflagging duty either to remain vigilant and awake or to immediately desist from driving. It is therefore not surprising that this Court, like many other courts, has deemed the act of falling asleep at the wheel alone to be enough to raise a jury question of negligence in the tort arena. *See Bernosky [v. Greff],* 350 Pa. 59, 38 A.2d [35], 36 [ (1944) ].

> Appellee appears to dispute this proposition, suggesting that without affirmative evidence from the Commonwealth that he had some warning that sleep was coming, little or no inference of negligence or recklessness may be drawn from the admitted fact that he fell asleep. Of course, appellee is in the best and perhaps only position to know if the common signs of fatigue and impending sleep came upon him, which he ignored; the Commonwealth was not required to obtain a confession from appellee in order to make out its *prima facie* case. Rather, the Commonwealth could rely upon the fact that it is common knowledge that sleep is preceded by some internal warning. As Chief Justice Maxey noted in *Bernosky:*

> > Any individual who falls asleep naturally, does so either willingly or through exhaustion. If he falls asleep willingly while driving an automobile he is, of course, negligent. If he drives an automobile while he is in

such a state of exhaustion that he falls asleep though he does not will to do so, he is equally negligent, for he is chargeable with knowledge that an individual in a state of exhaustion is likely to fall asleep.

In a normal human being sleep does not come without warning. Before sleep there is drowsiness and before drowsiness there is usually great fatigue or at least a desire to sleep. Human affairs would be in a precarious state if locomotive engineers, aviators, chauffeurs, motormen and others in charge of machinery in motion were liable to "fall asleep" at any time without first becoming consciously aware of sleep's approach and taking immediate steps to bring to a stop the mechanism under their control or placing it in the hands of one who is completely awake and alert. The Creator wisely provided that sleep does not come upon human beings unannounced. Therefore when a driver of an automobile falls asleep while driving, it is a legitimate inference that he was negligent either (1) in permitting himself to fall asleep while at such a responsible post of duty, or (2) if he possessed no such will power as would enable him to keep awake under the circumstances in not ceasing to drive the vehicle.

*Id.* Chief Justice Maxey went on to note that:

Any other rule than this in respect to sleeping at the wheel must be rejected as contrary to the facts of life and as condemned by sound considerations of public policy. For a driver to sleep at the wheel of a moving automobile makes him prima facie guilty of negligence. If there are any facts which under the circumstances tend to exculpate him from the charge of negligence, the burden of producing them is upon him.

*Id.*

The phenomenon of sleep has not much changed since *Bernosky*. Perhaps appellee has a colorable claim that he is the unusual person for whom sleep comes totally unannounced-although, if that is so, appellee no doubt was aware of that unusual phenomenon and should either have taken extra precaution or avoided this particular driving responsibility. Or perhaps appellee will claim that in this one instance no warning signs came in advance of his sleeping at the wheel. Such is a matter for defense, however; and the Commonwealth was entitled to rely upon "the facts of life" recognized by this Court in *Bernosky* in proving its *prima facie* case.

We recognize that *Bernosky* and like cases, since they sound in tort, were concerned only with the inference of negligence arising from sleeping at the wheel. However, such conduct also is probative of recklessness. Since we have concluded that it is fair to infer that, in falling asleep, appellee ignored the warning signs of sleep, the very fact that appellee fell asleep is evidence of a conscious decision to run that risk, with the concomitant risk of injury or death attending it, given his specific situation. As Judge Lally–Green persuasively reasoned below: "by continuing to drive after receiving the warning signs of sleep, a person does indeed consciously disregard a substantial risk of death on our highways." *Huggins,* 790 A.2d at 1052 (Lally–Green, J., concurring and dissenting). The risk of death posed by a sleeping driver of an automobile is obvious. It is a risk that any driver must appreciate before getting behind the wheel or continuing to drive.

*Huggins* at 407–410, 836 A.2d at 869–870.

With *Huggins* in mind, we examine the quantum of evidence with respect to Ap-

pellant's falling unconscious while at the wheel. Here, the parties' stipulated facts addressed to the trial court's consideration contained the following relevant statements as to the cause of the accident:

25. Defendant was interviewed by PSP Trooper Michael Acevedo.

* * *

27. According to the report of Trooper Acevedo, Defendant Pedota indiated that he was possibly in the right lane.

28. According to the report of Trooper Acevedo, Defendant Pedota stated he woke up when he heard the crash.

29. According to the report of Trooper Acevedo, Defendant Pedota stated that he must have fallen asleep while operating Vehicle 1.

* * *

33. Defendant indicated that nothing stuck ou[t] concerning his recollection of the incident and that he had just blackened out.

* * *

38. As a result of the impact between Vehicle 1 and Vehicle 2 and Vehicle 3 [a passenger car which collided into the rear of Pedota's tractor-trailer after Pedota collided with Chacon's tractor-trailer], a fire occurred in which all vehicles and contents were totally destroyed except Defendant Pedota's logbook and shipping manifest.

39. The Commonwealth has no evidence that Defendant Pedota, at the time immediately preceding the impact between Vehicle 1 and Vehicle 2, was operating his vehicle in violation of the provisions of the Motor Vehicle Code regarding excessive speed, speed in excess of the posted limits, improper passing of other vehicles or similar provisions, other than the departure of Vehicle 1 from its lane of travel such that it struck Vehicle 2 then lawfully parked on the right berm or shoulder of the roadway.

* * *

46. The evidence available to the Commonwealth and the sole allegation of the Commonwealth as to the proximate cause of the collision between Vehicle 1 operated by Defendant Pedota and Vehicle 2 resulting in the death of Mario Chacon by blunt force trauma is that Defendant Pedota fell asleep or blacked out while operating Vehicle 1, which drifted out of its lane of travel and onto the right-side berm of Route 78 striking Vehicle 2.

47. Other than as aforesaid, the Commonwealth has no evidence nor does the Commonwealth believe that there will ever be any further evidence available to it regarding the mechanism and causation of the crash since everything was completely consumed by persistent diesel fuel fire resulting from the ruptured fuel tanks of the vehicles involved.

48. A civilian witness operating a passenger car (Vehicle 4) immediately prior to the crash in the lane adjacent to the lane of travel by Defendant Pedota has provided eye witness testimony to PSP Trooper Michael Acevedo that, to the best of his observations, immediately preceding the crash:

a. Vehicle 1 was not exceeding the posted speed limit,

b. he observed no readily evident mechanical failures of Vehicle 1,

c. Vehicle 1 made no erratic or sudden movements, [and]

d. the operator of Vehicle 1 appeared to have fallen asleep allowing Vehicle 1 to drift out of its lane and impact with parked Vehicle 2.

49. A complete PSP Accident Reconstruction Study and Analysis was per-

formed by PSP personnel specifically trained and experienced in such work.

50. The PSP Accident Reconstruction Report, using all available evidence and approved scientific methods for such, found no evidence of any mechanical failures which would have been a factor in causing the collision between Vehicle 1 and Vehicle 2.

51. The PSP Accident Reconstruction Report supports the Commonwealth's contention that the proximate cause of the collision between Vehicle 1 and Vehicle 2 and the resulting death of Mario Chacon by blunt force trauma was due to Defendant Pedota falling asleep or blacking out for unknown reasons while in control of Vehicle 1.

52. The Commonwealth cannot produce any evidence nor does the Commonwealth believe that there will be any ability to ever substantiate any causation or factor as the proximate cause of the accident other than Defendant Pedota falling asleep or blacking out while operating Vehicle 1.

Stipulation of Facts filed 11/30/11, pp. 3–7.

As discussed *supra*, Appellant argues no volitional act supported his conviction where it was stipulated that he may have simply "blacked out" immediately prior to the collision. Specifically, Appellant distinguishes the phrase "falling asleep" from "blacking out," argues the latter provides no warning signs of its arrival, and thus contends that insofar as the record admits of its equal likelihood of having occurred in this case, it may not serve as the basis for his convictions. However, the stipulated facts belie this argument. As the reproduced record above shows, Appellant admitted to Trooper Acevedo that he must have fallen asleep just prior to the accident (stipulation # 29), effectively blacking out and thus having no memory of the event (stipulation # 33). When read in the context of what Appellant actually said to the investigating trooper, the terms appear to have been used by Appellant not in the alternative but, instead, interchangeably. The stipulation of facts submitted for the court's consideration, therefore, must be read as reflecting Appellant's own admission at the scene that he fell asleep just before the collision. In this respect we agree with the trial court's finding that Appellant's distinction is "unsupported" and "illusory." [2]

In light of *Huggins*, we find Appellant's stipulation to having fallen asleep while driving an eighteen-wheel tractor-trailer along busy Interstate 78 supplied evidence of the gross negligence or recklessness required to convict in this case. There clearly existed under these circumstances a substantial risk of death on the highway, a risk that tragically came to pass. It was therefore incumbent upon Appellant to rebut this proof with evidence that the classic signs of sleep eluded him so as to deprive him the opportunity to stop his truck safely before sleep began. Indeed, a driver in Appellant's position is in a unique position to develop this aspect of the case, as only he was present in the cab of his tractor-trailer in the moments before he lost consciousness. Just as the law acknowledges the existence of a criminal conspiracy will hardly, if ever, be provable if evidence of affirmative statements made in secret were required, so too would the burden of proof in this realm be next to insurmountable if it required affirmative evidence of sleep's warning signs. Instead, so long as the evidence shows a

2. It must be noted that nothing in the stipulated record remotely suggests Appellant's physical appearance and demeanor were consistent with a condition that would cause sudden blackouts.

driver fell asleep and caused death amidst circumstances demonstrating a reckless disregard of human life, these signs will be implied and the Commonwealth will have met its burden of proof as a matter of law. The burden of production then shifts to the defendant driver to appeal to the finder of fact that he was deprived of both warning signs and an opportunity to act on them.[3]

At trial, Appellant faced evidence that he had fallen asleep while driving his eighteen-wheel tractor-trailer on Interstate 78. This type of vehicle is among the largest traveling our roadways, and on an interstate it typically travels at speeds sufficient to inflict devastating harm to persons and property should it cause a collision, as was the case here. Indeed, the ensuing accident caused the death of another driver. As Appellant failed to rebut evidence of his grossly negligent or reckless disregard of sleep's customary notice, all requisite elements of a Homicide by Vehicle and Involuntary Manslaughter were proven. Accordingly, we reject Appellant's arguments as devoid of merit.

Judgment of sentence is affirmed.

---

**3.** In this regard, whether the reasons for a driver's loss of consciousness were known or unknown is subordinate to the crucial question of whether unconsciousness occurred with or without notice and the opportunity to bring one's vehicle to a safe stop before its onset.