J-A30036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| OLIVER FRANKLIN SAVAGE | : | |
| | : | |
| : | : | |
| | : | No. 3345 EDA 2014 |

Appeal from the Order October 29, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division No(s): CP-39-CR-2092-2014

BEFORE: MUNDY, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED MAY 27, 2016**

The Commonwealth takes this appeal from pretrial order of the Lehigh County Court of Common Pleas granting Appellee Oliver Savage's petition for writ of *habeas corpus*, dismissing the charges of involuntary manslaughter, recklessly endangering another person, and homicide by vehicle,[1] and holding over summary traffic offenses for further proceedings. The Commonwealth claims it established a *prima facie* case that Appellee was reckless when he caused a motor vehicle accident that killed the decedent, James Knappenberger. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2504, 2705; 75 Pa.C.S. § 3732.

The trial court's summary of the evidence presented by the Commonwealth, *see* Trial Ct. Op., 10/29/14, at 3-6, is not in dispute and will be discussed in further detail below. It suffices presently to note that on February 10, 2014, Appellee was driving a Freightliner truck tractor on Route 222 ("Hamilton Boulevard") North[2] toward the intersection of Hamilton Boulevard and Newton/Breinigsville Road.[3] Appellee failed to recognize that several vehicles were stopped, or slowly moving, on Hamilton Boulevard North at the traffic light at the intersection. Appellee braked and swerved to the right. However, Appellee's truck struck the decedent's Dodge Caravan minivan, which was the last vehicle in the line of traffic. The angle of the impact forced the decedent's minivan through the middle, left-turn lane near the intersection and into the opposite lane of travel, where it struck the side of a second tractor-trailer traveling on Hamilton Boulevard South. The second impact spun decedent's vehicle 180-degrees, and it came to a stop in the middle lane. The decedent suffered multiple traumatic injuries and was pronounced dead at the scene.

On April 30, 2014, the police filed a criminal complaint against Appellee charging him with involuntary manslaughter, two counts of recklessly endangering another person, and homicide by vehicle, as well as

---

[2] Although officially designated as a north/south route, Hamilton Boulevard ran east/west in the area Appellee was driving.

[3] Newtown Road is re-designated Breinigsville Road after it crosses Hamilton Boulevard.

four summary traffic violations: following too closely, driving at safe speed, careless driving, and reckless driving.[4] On July 28, 2014, Appellee filed an omnibus pretrial motion, which included a petition for writ of *habeas corpus* seeking the dismissal of all non-summary offenses. The trial court held a hearing on September 4, 2014, at which the Commonwealth admitted into the record four photographic exhibits, the transcript of the preliminary hearing, a copy of the autopsy report, a map of the area around the incident scene, and an accident reconstruction diagram. Additionally, Sergeant Cory Reader testified as an expert in accident reconstruction for the Commonwealth. The parties submitted memoranda following the hearing.

On October 29, 2014, the trial court entered the instant order dismissing the charges of homicide by vehicle, involuntary manslaughter and recklessly endangering another person, releasing Appellee from jail, and directing the parties to appear for a hearing on the charged summary offenses. The court concluded "[t]here [was] no evidence even inferring that [Appellee] consciously disregarded a known risk when he collided with [the decedent's] vehicle." Trial Ct. Op. at 10.

The Commonwealth filed a notice of appeal asserting that "the Order appealed from is a final order pursuant to 42 Pa.C.S.[ ] § 742 and Pa.R.A.P. 341(a), (b)(1)." Notice of Appeal, 11/19/14. The Commonwealth did not

---

[4] 75 Pa.C.S. §§ 3310, 3361, 3714, 3736.

certify its right to appeal an interlocutory order that terminates or substantially handicaps its prosecution. **See** Pa.R.A.P. 311(d).

Preliminarily, the Commonwealth's assertion that the underlying order is final requires further discussion. **See Commonwealth v. Allburn**, 721 A.2d 363, 365 (Pa. Super. 1988) (reiterating that this Court may raise jurisdictional questions *sua sponte*).

> [T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order. In this Commonwealth, an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order.

**Commonwealth v. Brister**, 16 A.3d 530, 533 (Pa. Super. 2011) (citations and quotation marks omitted).

First, a final order is one that "disposes of all claims and all parties" or "is expressly defined as a final order by statute[.]" Pa.R.A.P. 341(b)(1), (2). Alternatively, the trial court "may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(b)(3), (c).

Second, the Commonwealth may take an interlocutory appeal as of right if it "certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). However, the Commonwealth must include the required certification to invoke this Court's

jurisdiction under Rule 311(d). *See* Pa.R.A.P. 311(d), 904(e); ***Commonwealth v. Knoeppel***, 788 A.2d 404, 407 (Pa. Super. 2002).

Third, a trial court may also certify that its interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter . . . ." 42 Pa.C.S. § 702(b). However, the trial court's issuance of a certification, or refusal to issue a certification, is a prerequisite to the exercise of appellate jurisdiction. *See Commonwealth v. Dennis*, 859 A.2d 1270, 1275 (Pa. 2004); ***Brister***, 16 A.3d at 534.

Fourth, a collateral order is one "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). There are three elements of a collateral order, all of which must be satisfied: (1) the "review of the order in question does not implicate the merits of the underlying dispute[;]" (2) "the interests at stake are too important to be denied review[;]" (3) a claim would be lost or an interest irreparably injured by a delay. *See Commonwealth v. Wright*, 78 A.3d 1070, 1077 (Pa. 2013).

The instant order cannot be regarded as final. The order did not dispose of the summary traffic offenses joined in the underlying action,[5] was not defined as final by statute,[6] and was not determined to be final by the trial court under Pa.R.A.P. 341(c). Further, we cannot consider this interlocutory appeal as one of right or by permission, because the Commonwealth did not include a Pa.R.A.P. 311(d) certification and the trial court did not certify, or refuse to certify, the order as appealable. Lastly, the order cannot be deemed collateral, because the dismissal of the charges

___

[5] Additionally, when addressing whether orders dismissing charges at the preliminary hearing for lack of a *prima facie* case are appealable, our courts have considered whether the defect requiring dismissal could be cured. **See, e.g.**, **Commonwealth v. Waller**, 682 A.2d 1292, 1294 (Pa. Super. 1996) (*en banc*); **Commonwealth v. Finn**, 496 A.2d 1254, 1255 (Pa. Super. 1985) (noting dismissal of charges at preliminary hearing "not ordinarily appealable since the defendant is normally subject to rearrest"). The refiling of charges based on additional evidence is a viable procedure to cure a defect that caused the dismissal of charges upon a defendant's petition for writ of *habeas corpus*. **Commonwealth v. Carbo**, 822 A.2d 60, 72 (Pa. Super. 2003) (*en banc*).

[6] To the contrary, the comments to Pa.R.Crim.P. 589 suggest an appeal under Pa.R.A.P. 311(d) is proper:

> In any case in which a summary offense is joined with a misdemeanor, felony, or murder charge, and therefore is part of the court case, when an appeal of a pretrial disposition of the misdemeanor, felony, or murder charge is taken, disposition of the summary offense should be delayed pending the appeal. **See** Rules of Appellate Procedure 311 (Interlocutory Appeals as of Right), 903 (Time for Appeal), and 1701 (Effect of Appeal Generally).

Pa.R.Crim.P. 589 cmt.

implicates the underlying dispute and does not involve rights that would be irreparably lost.

Thus, the Commonwealth failed to invoke this Court's jurisdiction under a strict interpretation of the Rules of Appellate Procedure. The proper course was for the Commonwealth to appeal under Pa.R.A.P. 311(d). **See Commonwealth v. Karetny**, 880 A.2d 505, 512-13 (Pa. 2005); **accord** Pa.R.Crim.P. 589 cmt.[7] The Commonwealth, at a minimum, should have certified that the order appealed from terminated or substantially handicapped its prosecution. **See** Pa.R.A.P. 311(d), 904(e).

Although we could quash this appeal, the Rules of Appellate Procedure must "be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable." Pa.R.A.P. 105(a). Moreover, we may waive certain requirements or provisions in a particular case when "[i]n the interest of expediting decision" or "for other good cause shown." **Id.**

---

[7] The comment to Pa.R.Crim.P. 589 states:

> In any case in which a summary offense is joined with a misdemeanor, felony, or murder charge, and therefore is part of the court case, when an appeal of a pretrial disposition of the misdemeanor, felony, or murder charge is taken, disposition of the summary offense should be delayed pending the appeal. **See** Rules of Appellate Procedure 311 (Interlocutory Appeals as of Right), 903 (Time for Appeal), and 1701 (Effect of Appeal Generally).

Pa.R.Crim.P. 589 cmt.

Historically, our courts have reviewed orders dismissing charges with little discussion. *See, e.g.*, *Commonwealth v. Hess*, 414 A.2d 1043, 1047 (Pa. 1980); *Commonwealth v. Hughes*, 364 A.2d 306, 308 n.2 (Pa. 1976) (addressing quashal of one of three indictments under Appellate Court Jurisdiction Act of 1970); *cf. Commonwealth v. Huggins*, 836 A.2d 862, 864 n.2 (Pa. 2003).[8] Further, the scope of interlocutory appeals under Pa.R.A.P. 311(d) generally involved orders precluding the Commonwealth's evidence. *See, e.g.*, *Commonwealth v. White*, 910 A.2d 648 (Pa. 2006) (plurality); *Commonwealth v. Cosnek*, 836 A.2d 876, 877 (Pa. 2003). Thus, the law is not entirely clear. Moreover, there is no suggestion that the Commonwealth took this appeal in bad faith. We thus decline to quash this appeal, regard as done that which should have been done, and review the trial court's pretrial order dismissing the non-summary counts against Appellee. *See* Pa.R.A.P. 105(a).

The Commonwealth's sole claim is that the trial court erred in granting Appellant's petition for writ of *habeas corpus* and dismissing the charges of involuntary manslaughter, recklessly endangering another person, and

---

[8] In *Huggins*, the trial court dismissed charges of aggravated assault, involuntary manslaughter, and reckless endangerment, but concluded the Commonwealth established a *prima facie* case to proceed on charges of homicide by vehicle. The court also granted the defendant's motion to suppress evidence regarding the failure to use seatbelts. *Huggins*, 836 A.2d at 864. Although the *Huggins* Court referred to *Hess* when discussing appellate jurisdiction, a review of the procedural history of that case reveals the Commonwealth filed a Pa.R.A.P. 311(d) certification. *See* *Commonwealth v. Huggins*, 790 A.2d 1042 (Pa. Super. 2002) (*en banc*).

homicide by vehicle. Commonwealth's Brief at 2, 11. The Commonwealth argues it established a *prima facie* case that Appellee acted recklessly. ***Id.*** at 14. First, it relies on ***Commonwealth v. Lamonda***, 52 A.3d 365 (Pa. Super. 2012) (*en banc*), to assert "the evidence presented clearly established that [Appellee] veered his tractor-trailer to the right, outside the lane of travel when he could not do so safely." ***Id.*** at 17. That decision, according to the Commonwealth, exacerbated the effects of collision by forcing the decedent's vehicle into oncoming traffic. ***Id.*** The Commonwealth thus emphasizes that Appellee's choice of speed prior to the accident and his decision to swerve out of his lane before the accident were "volitional" acts. ***Id.***

Second, the Commonwealth argues that the following evidence and inferences established Appellee's recklessness:

> The physical evidence, including the damage to the vehicles, the location of glass and other marks on the roadway, and the final resting place of [Appellee's] vehicle support a conclusion that [Appellee] did not see the vehicles in front of him until it was too late for him to avoid a collision. He hit the brakes and swerved to the right. This maneuver was deliberate, albeit not successful and, in fact, caused greater damage than what might have occurred had he simply braked.
>
> \*     \*     \*
>
> [Appellee] had approximately 1600 feet of assured clear distance in which to bring his vehicle to a stop. He was approaching an intersection. He intentionally and willfully drove at an unsafe speed, such that he could not stop before striking [the decedent's] minivan. This was reckless because of the serious harm or death when a

tractor-trailer strikes a passenger's vehicle while in 9th gear and traveling at about 40 miles per hour.

* * *

There is no evidence that [Appellee] slowed or tried to apply his brakes at any time before the panic braking immediately before impact. [Appellee's] vehicle was in 9th gear indicating [his] intent to maintain speed rather than slow down.

*Id.* at 18-20. Lastly, the Commonwealth asserts that the mere fact that Appellee was driving near the speed limit before the crash was not "a safe haven" from criminal liability and concludes "[Appellee's] failure to maintain proper control of his vehicle is the only reason why [the decedent] was killed." *Id.* at 20-21. We conclude that the Commonwealth's arguments do not warrant appellate relief.

The principles governing our review are as follows:

At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Moreover, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case."

*Huggins*, 836 A.2d at 866 (citations omitted).

The Commonwealth concedes that all of the charges dismissed by the trial court share the element of recklessness,[9] which is defined as follows:

> A person acts recklessly with respect to a material element of an offense **when he consciously disregards a substantial and unjustifiable risk** that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

---

[9] Section 2504 of the Crimes Code defines involuntary manslaughter as follows: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a **reckless or grossly negligent manner**, or the doing of a lawful act in a **reckless or grossly negligent manner**, he causes the death of another person." 18 Pa.C.S. § 2504(a) (emphasis added). Involuntary manslaughter is a first-degree misdemeanor unless the victim is under twelve years old and in the care of the defendant. 18 Pa.C.S. § 2504(b). Recklessly endangering another person is a second-degree misdemeanor committed when a person "**recklessly** engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705 (emphasis added).

The Vehicle Code defines homicide by vehicle as follows:

> Any person who **recklessly or with gross negligence** causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a). Although the involuntary manslaughter and homicide by vehicle statutes refer to "gross negligence" in the disjunctive, that term is equivalent to recklessness as defined by 18 Pa.C.S. § 302(b)(3). **See Huggins**, 836 A.2d at 868; **Commonwealth v. Grimes**, 842 A.2d 432, 435 & n.5 (Pa. Super. 2004).

18 Pa.C.S. § 302(b)(3) (emphasis added).

By comparison, "criminal negligence" requires that the defendant "**should be aware** of a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S. § 302(b)(4) (emphasis added). Both recklessness and negligence require that the risk be "of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S. § 302(b)(3) & (4). The phrase of "should be aware" in the definition of negligence speaks to a failure to appreciate the risk, while the phase "consciously disregards" in the definition of recklessness implies the defendant is aware of the risk. *See id.*

The decisional law discussing drivers falling asleep is instructive. In *Huggins*, the defendant was operating a van carrying twenty-one children, some crowded into fifteen passenger-seats and some seated on the floor. *Huggins*, 836 A.2d at 863-64. The defendant admitted that "he fell asleep" and claimed "he awoke just before the van collided with the rear end of" a sedan in front of him. *Id.* at 863. The driver of the sedan testified he was "traveling at approximately sixty to sixty-five miles per hour" in the left lane and "did not see the van until the collision." *Id.* The van struck the sedan, veered right across the right travel lane, and flipped over on the

embankment on the right shoulder of the highway. Two of the children in the van were killed. *Id.*

The defendant, in ***Huggins***, was charged with numerous counts, including homicide by vehicle and involuntary manslaughter, and sought *habeas corpus* relief in the trial court. ***Id.*** at 864. The trial court, in relevant part, concluded that the Commonwealth failed to establish a *prima facie* case of recklessness and dismissed the involuntary manslaughter counts. ***Id.*** The Commonwealth appealed, and this Court affirmed the dismissal of the involuntary manslaughter counts. ***Id.*** at 864-65. Specifically, we concluded the Commonwealth's evidence did not indicate that the defendant "'had reason to believe he was dangerously tired before falling asleep.'" ***Id.*** at 865.

The Pennsylvania Supreme Court granted allowance of appeal and reversed this Court's order affirming the trial court's dismissal of the charges. ***Huggins***, 836 A.2d at 863. The ***Huggins*** Court rejected the Commonwealth's contention that the disjunctive language "recklessness or gross negligence" in the involuntary manslaughter statute permitted a finding of potential liability on a lesser degree of "recklessness" than set forth in 18 Pa.C.S. § 302(b)(3). ***Id.*** at 867-68. However, the Court concluded the Commonwealth's evidence in that case was sufficient to establish a *prima facie case*, reasoning:

> Losing consciousness at the wheel differs in kind from the acts of momentary inadvertence or inattention that

often occasion car accidents and are commonly encompassed in the term "negligence" in the tort arena. A momentary lapse leaves the driver unprepared for the unexpected or extraordinary. A loss of consciousness, on the other hand, leaves one totally unprepared even for the ordinary requirements for safe driving. Drivers have an unflagging duty either to remain vigilant and awake or to immediately desist from driving. It is therefore not surprising that this Court, like many other courts, has deemed the act of falling asleep at the wheel alone to be enough to raise a jury question of negligence in the tort arena.

[The defendant] appears to dispute this proposition, suggesting that without affirmative evidence from the Commonwealth that he had some warning that sleep was coming, little or no inference of negligence or recklessness may be drawn from the admitted fact that he fell asleep. Of course, [the defendant-driver] is in the best and perhaps only position to know if the common signs of fatigue and impending sleep came upon him, which he ignored; the Commonwealth was not required to obtain a confession from [the defendant] in order to make out its *prima facie* case. Rather, the Commonwealth could rely upon the fact that it is common knowledge that sleep is preceded by some internal warning. . . .

*Id.* at 869. The ***Huggins*** Court did "not resolve the question of whether falling asleep alone is enough to raise a jury question of recklessness" and summarized the additional circumstances evincing the defendant's "conscious disregard of the serious risk involved" in that case. *Id.* at 870. Those circumstances included having children-passengers in excess of the van's capacity and his excessive speed, both of which were in his "knowledge and control" and "increased the risk of collision, injury, and death." *Id.* at 870-71.

In *Commonwealth v. Pedota*, 64 A.3d 634 (Pa. Super. 2013), the defendant was operating a tractor-trailer on Interstate 78. *Id.* at 635. The defendant's tractor-trailer drifted from its lane of travel and struck another tractor-trailer, killing the driver of that vehicle. *Id.* The defendant proceeded to a stipulated bench trial on charges of involuntary manslaughter and homicide by vehicle. *Id.* at 634-35. The record established the defendant told the investigating police officer (1) he "must have fallen asleep while operating" his tractor-trailer, (2) he "woke up when he heard the crash[,]" and (3) he "just blackened out." *Id.* at 639. An eyewitness stated the defendant's vehicle was not exceeding the speed limit, made no erratic or sudden movements, and had no obvious mechanical failures. *Id.* The witness asserted the defendant "appeared to have fallen asleep allowing [his tractor-trailer] to drift out of its lane and impact with" the decedent's truck. *Id.* The parties further agreed:

> [T]he sole allegation of the Commonwealth as to the proximate cause of the collision between [the defendant's tractor-trailer] and [the decedent's tractor-trailer, which resulted in the decedent's death] is that [the defendant] fell asleep or blacked out while operating [his tractor-trailer], which drifted out of its lane of travel and onto the right-side berm of Route 78 striking [the decedent's tractor-trailer].

*Id.*

The trial court found the defendant guilty of involuntary manslaughter, homicide by vehicle, and two summary traffic offenses, and sentenced him

- 15 -

for homicide by vehicle.[10]  *Id.* at 635.  The defendant appealed to this Court, asserting that the trial court erred in finding he fell asleep and impermissibly shifted the burden to him to establish that sleep "came completely unannounced."  *Id.*

The **Pedota** Court affirmed the judgment of sentence.  *Id.* at 640. The Court found the defendant's admissions "that he must have fallen asleep just prior to the accident . . . , effectively blacking out and thus having no memory of the event" belied his attempt to distinguish "'falling asleep' from 'blacking out[.]'" *Id.*  The Court concluded the defendant's "stipulation to having fallen asleep while driving an eighteen-wheel tractor-trailer along busy Interstate 78 supplied evidence of the gross negligence or recklessness required to convict in this case."  *Id.*

The **Pedota** Court also rejected the defendant's claim that the trial court impermissibly shifted the burden of proof, explaining that

> so long as the evidence shows a driver fell asleep and caused death amidst circumstances demonstrating a reckless disregard of human life, these signs will be implied and the Commonwealth will have met its burden of proof as a matter of law.  The burden of production then shifts to the defendant driver to appeal to the finder of fact that he was deprived of both warning signs and an opportunity to act on them.

*Id.* at 640-41.

---

[10] The trial court in **Pedota** merged the involuntary manslaughter count into the homicide by vehicle count for sentencing.  **Pedota**, 64 A.3d at 635 n.1.

Thus, to establish recklessness, the Commonwealth bears the preliminary burden that a defendant engaged in some conduct beyond inattentiveness, and that he had some warning and opportunity to act to prevent the harm flowing from his conduct. ***See Huggins***, 836 A.2d at 869-71; ***Pedota***, 64 A.3d at 640-41. In the case of sleep, our courts have created a rebuttable presumption that a defendant was aware of the common warnings of the risk of falling asleep, but continued to operate a vehicle in spite of those warnings. ***See Pedota***, 64 A.3d at 640-41. Nevertheless, the Commonwealth must carry its initial burden of proving conduct that is either reckless or which may sustain an inference of recklessness. ***See Huggins***, 836 A.2d at 867-68.

Turning to the Commonwealth's arguments in this appeal, its reliance on ***Lamonda*** warrants no relief. In ***Lamonda***, the defendant was convicted of homicide by vehicle after he drove his tractor-trailer into "an oncoming lane of traffic and struck a passenger vehicle, resulting in the death of all the occupants of the passenger vehicle." ***Lamonda***, 52 A.3d at 367. The defendant appealed, asserting, *inter alia*, the evidence was insufficient to convict him of homicide by vehicle because the Commonwealth failed to prove a predicate traffic offense. ***Id.*** at 368. This Court observed that the defendant's claim that his vehicle left its lane of travel "on its own after the failure of the front left steering wheel" was "technically not an argument over [his] state of mind, but a contention that there was no volitional act . .

- 17 -

. ." *Id.* at 369 (discussing 18 Pa.C.S. § 301(a) (requiring "voluntary" act for criminal liability)). The *Lamonda* Court rejected the claim, noting the expert evidence that the defendant steered into the opposite lane of travel due to his failure to recognize an obstacle in his lane and that the defendant's tire failed after the collision. *Id.* The Court concluded that the expert evidence was thus sufficient "to establish [the defendant] moved the tractor-trailer out of its lane of travel of his own volition." *Id.* at 369. Accordingly, we find *Lamonda* inapposite, and that case provides little guidance regarding the specific issue of recklessness in this appeal.

As to the Commonwealth's argument that its evidence was sufficient to establish a *prima facie* case of recklessness, it focuses on three critical facts established by the record. A review of the record in a light most favorable to the Commonwealth reveals that the evidence and inferences therefrom are not in dispute.

The accident occurred shortly before 9:00 a.m. on February 10, 2014. There were no environmental, roadway, or mechanical factors substantially contributing to the accident. Further, there was no evidence establishing Appellee fell asleep, was intoxicated, was using his cell phone, or was operating his vehicle in an unusual manner preceding his approach to the intersection. Following the accident, Appellee's vehicle was in ninth gear, which indicated Appellee did not intend to slow or stop.

The trial court described the area of the accident as follows:

> The day was clear with no precipitation. The roadway was dry with some wet spots. There was plowed snow off the roadway beyond the fog line. For a motorist traveling northbound for a considerable distance on Route 222 before entering this intersection as [Appellee] was, he would pass through the village of Maxatawny where the posted speed limit is 35 miles per hour. After traveling through that village, there is a posted speed limit of 55 miles per hour which posting is the final one before the motorist would arrive at this intersection. For the same motor vehicle operator traveling northbound, he would first see this intersection from approximately three-tenths of a mile [approximately 1,600 feet] before arriving at it. In the truck tractor that [Appellee] operated, he sat higher than a person who operates a passenger vehicle.

Trial Ct. Op. at 3.

After the accident, Appellee remained at the scene and gave a statement to Sergeant Easparr. According to the sergeant, Appellee

> was crying at this time. When I asked him what happened, he advised he was traveling northbound on 222. When he noticed a line of traffic stopped in front of him it was too late. He tried to apply the hard brake on a wet roadway, the vehicle was not stopping. He swerved to the right and caused the passenger side rear of the minivan that was last in line of the stopped vehicle that propelled the minivan into the southbound lanes of travel . . . .

N.T. Prelim. H'rg, 5/16/14, at 55. Appellee told the sergeant, "[I]t is my fault, I did this."[11] *Id.*

The Commonwealth's expert witness in accident reconstruction, Sergeant Reader, observed Appellee's truck was in ninth gear. Further, he

---

[11] Although Appellee filed a motion to suppress his statements to Sergeant Easparr, the trial court considered the statements for the purposes of his petition for writ of *habeas corpus*.

- 19 -

testified the electronic control module ("ECM") from Appellee's truck showed

a hard braking event without the clutch being engaged. He explained:

> The data, especially the ECM data from the vehicle indicates that [Appellee] failed to recognize the vehicles were either stopped or slowed forward of his vehicle in a reasonable amount of time to slow his vehicle and maintain control of it. That failure caused the impact. His braking was too short or too late to allow his vehicle to be kept under control.

*Id.* at 26.

Sergeant Reader summarized his findings as follows. Appellee

> was traveling down the roadway, gear selection indicates he was traveling with open space in front of him prior to getting to that intersection and did not recognize that the open space was closing rapidly because there was vehicles stopped in front of him. . . . [T]here were several vehicles stopped in front of [the decedent. T]he traffic signal was either red or just changed to green or some sort of interaction where all those cars were stopped forward of [Appellee's] vehicle. He failed to recognize either enough to bring his vehicle to a stop or at least slow to a point to keep control of it until those cars started to proceed away from him or forward of him.

*Id.* at 28.

As to Appellee's operation of the tractor-trailer immediately preceding

the accident, Sergeant Reader testified there was a "hard" or "panic" braking

before impact without the clutch being engaged. *Id.* at 22-23. The skid

marks on the roadway, the disturbances of the snow that had been plowed

to the guardrails on the right shoulder, and the damage on the front driver's

side of Appellee's vehicle corroborated that he veered right. *Id.* at 26.

Regarding the accident itself, the sergeant opined Appellee

struck the minivan in an offset type manner. So the passenger side right corner or rear half of the minivan was first impacted.

With that being said, there is a very good possibility that had he not made that steering maneuver at the last moment and had struck the vehicle completely across the back, he probably would have pushed it into the vehicles forward of it. But by being offset, he changed that, the trajectory of the van left the impact which would have sent it across the travel lane . . . . That impact put that van in a location on the roadway that opened it up to a second impact. A third vehicle involved in this crash struck the van a second time in the lawful lane that the third vehicle was traveling in. He [the driver of the third vehicle in the opposite travel lane] was there . . . in a moment that he really did not have time to do anything. In fact, unit three, the other tractor-trailer did not strike the car with the front of his vehicle, unit three was actually struck by the van under the driver's side door in the area of his fuel tank which was on the driver's side. So unit three was just in the wrong place at the wrong time. But that offset initially the steering input at the last moment which caused the offset striking from the rear end is what put that vehicle [the van] in that position in the first place.

*Id.* at 27-28.

On cross-examination, Sergeant Reader agreed that Appellee "was doing everything he could to avoid" the impact. *Id.* at 37. The following exchange also occurred:

[Appellee's counsel]. You are not suggesting that he should have thought at that point and smacked right into the back of the minivan instead of trying to maneuver to the right; you are not suggesting that?

[Sergeant Reader]. No. I don't think it was a decision he consciously made. I think it was what he unconsciously or—

Q. It was a reaction?

- 21 -

A. He had to do something.

*Id.* at 37-38.

Sergeant Reader did not offer an opinion on Appellee's exact speed at the point of impact, noting that "would be unfair and not accurate." *Id.* at 39. He offered a range of speeds of thirty to fifty miles per hour based on engine data, gear selection, and tire size, with the ECM giving a speed "around 40." *Id.* at 40. This testimony, as well as Sergeant Reader's description of the speed limits in the area surrounding the accident scene, was not contradicted elsewhere in the record.

A review of the record thus reveals no evidence that Appellee's failure to recognize the traffic at the intersection arose from any affirmative conduct, as opposed to inadvertence or inattentiveness. Similarly, there was no indication that Appellee was aware of, and proceeded despite, the risk of an accident as he approached the intersection from 1,600 feet. That Appellee was driving in ninth gear does not itself bespeak the reckless operation of his vehicle, but supports the Commonwealth's expert's opinion that he failed to recognize the traffic in front of him and the open space was rapidly closing. Moreover, although the Commonwealth focuses on Appellee's decision to veer to the right immediately before impact, which ultimately forced the decedent's vehicle into oncoming traffic, the Commonwealth's expert had no reason to dispute that Appellee was attempting, but failed, to avoid the collision. Similarly, there is no indication

either in the evidence or a reasonable inference from the evidence that Appellee was disregarding a risk that the impact would force the decedent's vehicle into oncoming traffic. Accordingly, we agree with the trial court that the Commonwealth did not adduce sufficient evidence to establish a *prima facie* case of recklessness.

Lastly, we agree with the Commonwealth that driving at the speed limit is not a safe harbor and may evince recklessness under the circumstances of an accident. We also agree that Appellee's failure to appreciate the risk when traveling the approximately 1,600 feet to the intersection[12] could establish some degree of negligence. However, absent additional evidence, there is no basis to conclude that Appellee was engaging in any conduct that would elevate his culpability to a conscious disregard of a substantial risk. **See Huggins**, 836 A.2d at 867-68.

Order affirmed.

Jenkins, J. Concurs in the Result.

Mundy, J. files a Dissenting Statement

---

[12] We take notice that an object travelling at 55 miles per hour (approximately 81 feet per second) would cover a distance of 1,600 feet in approximately 20 seconds.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2016