**COMMONWEALTH of Pennsylvania**

v.

**Thomas A. LAMONDA, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 12, 2011.

Filed Aug. 29, 2012.

Kimberly L. Stark, Public Defender, Lancaster, for appellant.

Andrew J. Gonzales, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., MUSMANNO, J., BENDER, J., GANTMAN, J., PANELLA, J., ALLEN, J., LAZARUS, J., and MUNDY, J.

## OPINION BY PANELLA, J.

Appellant, Thomas A. Lamonda, appeals from the judgment of sentence entered on July 22, 2009, by the Honorable Howard F. Knisely, Court of Common Pleas of Lancaster County. In this appeal, we are asked to determine, *inter alia*, whether the imposition of an enhanced sentence for a conviction of homicide by vehicle while driving under the influence, when it was not established that intoxication was a cause of the incident, violates equal protection under the law. Because we conclude that it does not, and that Lamonda's remaining issues merit no relief, we affirm.

On May 6, 2009, a jury found Lamonda guilty of two counts of homicide by vehicle arising from an incident where a tractor-trailer driven by Lamonda entered an oncoming lane of traffic and struck a passenger vehicle, resulting in the death of all the occupants of the passenger vehicle. On the same date, Judge Knisely found Lamonda guilty of driving under the influence of cocaine and the summary offenses of leaving his lane of travel in an unsafe manner, driving at an unsafe speed, and unlawful activities while driving. Thereafter, on July 22, 2009, Judge Knisely imposed an aggregate sentence of forty (40) to One hundred twenty (120) months of imprisonment. After the trial court denied post-sentence motions, Lamonda filed this timely appeal.

On appeal, Lamonda raises four issues for our review, which we restate for clarity:

I. The insufficiency of evidence with regard to Homicide by Vehicle;

II. Whether the imposition of an enhanced sentence for Homicide by Vehicle DUI-related violated equal protection rights;

III. Whether the trial court abused its discretion by imposing an en-

hanced sentence for Homicide by Vehicle DUI-related;

IV. Was the aggregate sentence manifestly excessive and unreasonable?

*See* Appellant's Brief, at 7–8.

In his first issue on appeal, Lamonda contends that the evidence at trial was insufficient to establish that he was guilty of homicide by vehicle. The homicide by vehicle statute provides that a driver who recklessly or with gross negligence causes the death of another person by violating any non-DUI motor-vehicle law is guilty of a felony of the third degree. *See* 75 Pᴀ. Cᴏɴs.Sᴛᴀᴛ.Aɴɴ. § 3732. Lamonda specifically challenges that the Commonwealth failed to present evidence capable of establishing that he violated any motor-vehicle law.

Our standard of review for challenges to the sufficiency of the evidence is well established.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). Any doubt about the defen-

dant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001).

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Stays*, 40 A.3d 160, 167 (Pa.Super.2012).

■ As noted above, Lamonda's sufficiency challenge is grounded in an argument that insufficient evidence was presented to convict him of violating any motor-vehicle laws. The trial court convicted Lamonda of violating multiple motor-vehicle laws: leaving his lane in an unsafe manner, driving at an unsafe speed, and unlawful activities while driving. If any one of these convictions is supported by sufficient evidence of record, Lamonda's challenge fails.

Accordingly, we turn to the charge that Lamonda left his lane of travel in an unsafe manner. It is illegal in Pennsylvania

for a driver to leave a clearly marked lane of travel before ascertaining that he can do so safely. *See* 75 PA. CONS.STAT.ANN. § 3309. Lamonda does not contest this rule; he merely argues that the statute has a *mens rea* requirement of "intentionally."[1] *See* Appellant's Brief, at 28. Upon closer review, however, it is clear that Lamonda's argument is that his tractor-trailer left the lane of travel on its own after the failure of the front left steering tire. *See* Appellant's Brief, at 28 (citing, *inter alia*, Lamonda's testimony that he did not deliberately turn his vehicle into opposing lane of traffic). This is technically not an argument over Lamonda's state of mind, but a contention that there was no volitional act on Lamonda's part that caused the vehicle to leave the lane of travel.

■ "A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act...." 18 PA. CONS.STAT.ANN. § 301(a). Therefore, the "Pennsylvania Crimes Code does not impose criminal liability on a person for an involuntary act." *Commonwealth v. Fierst*, 423 Pa.Super. 232, 620 A.2d 1196, 1202 (1993), *appeal denied*, 584 Pa. 672, 880 A.2d 1236 (2005).

In the case *sub judice*, the Commonwealth presented the testimony of Sergeant Jeff Jones of the Manheim Township Police Department. The trial court accepted Sergeant Jones as an expert in accident reconstruction. *See N.T.*, Trial, 5/4/2009—5/6/2009, at 180. Sergeant Jones testified that, in his expert opinion,

the tractor-trailer's front left steering tire failed after the collision. *See id.*, at 231. Sergeant Jones also noted that upon examining the accident scene, he noticed that the front steering wheels of the tractor were both oriented to the left. *See id.*, at 194–195. Furthermore, investigation of the accident scene revealed that the victims' vehicle hit the inside wall of the tractor-trailer's front left steering tire, indicating that it had been turned to the left when impact occurred. *See id.*, at 195. Based upon these and other observations, Sergeant Jones opined that Lamonda steered the tractor-trailer into the oncoming lane due to Lamonda's failure to recognize an obstacle in his lane in a timely manner. *See id.*, at 238.

This testimony is sufficient, if believed, to establish that Lamonda moved the tractor-trailer out of its lane of travel of his own volition. On appeal, we must accept this evidence as true in evaluating the sufficiency of the evidence. As such, there was sufficient evidence to establish that Lamonda violated a motor-vehicle law, thereby causing the death of the two victims. Accordingly, Lamonda's first issue on appeal merits no relief.

Next, Lamonda argues that the trial court violated his rights to equal protection under the law. Lamonda contends that the application of an enhanced offense gravity score, based upon the fact that a DUI conviction arose out of the same incident, is devoid of any rational basis and therefore violates the Equal Protection clause of the United States Constitution.[2]

---

1. Lamonda does not cite to any authority for this proposition.

2. While Lamonda claims that his rights under the Pennsylvania Constitution are likewise violated, he does not provide an *Edmunds* analysis. Accordingly, we conclude that we may proceed to address this claim under the Constitution of the United States. *See Common-*

*wealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (requiring an appellant to, *inter alia*, identify how the Constitution of the Commonwealth of Pennsylvania offers increased or different protections from the Constitution of the United States in order to preserve an argument that the state constitution offers more protection).

Specifically, Lamonda alleges that the aggravated classification of a homicide by vehicle conviction that arises from an incident involving, but not caused by, driving under the influence of a narcotic has no rational basis.

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Commonwealth v. Bullock*, 868 A.2d 516, 524 (Pa.Super.2005) (citation omitted).[3] Under an equal protection analysis, there are three recognized categories of governmental classification, each requiring a separate standard of scrutiny. *See Commonwealth v. Hilliar*, 943 A.2d 984, 996 (Pa.Super.2008) (citation omitted). Lamonda, in his appellate brief, concedes that this appeal requires, the third or least restrictive standard of scrutiny. *See* Appellant's Brief, at 35. As such, the classification at issue will be found to be valid unless the classification bears no rational relationship to a legitimate governmental interest. *See Hilliar*, 943 A.2d at 984.

Lamonda argues that there was no evidence of record capable of supporting a finding that his abilities were impaired by the presence of cocaine metabolites in his bloodstream. Therefore, Lamonda contends, the trial court's use of the aggravated classification in the sentencing guidelines bears no rational relationship to any legitimate governmental interest.

To address Lamonda's claim we turn to the Sentencing Commission's statements about these guidelines when they were adopted. The current subcategories of homicide by vehicle sentencing guidelines were proposed by the Pennsylvania Sentencing Commission on May 11, 1991. In the proposal, the Sentencing Commission noted that "[t]o reflect the seriousness of a death occurring at the time a person is driving under the influence, the Commission proposes establishing higher offense gravity scores for ... homicide by vehicle if the defendant is also convicted of driving under the influence which occurred at the same time." 21 Pa. Bull. 19, 2238 (May 11, 1991).

We conclude that this reasoning is sufficiently related to a legitimate governmental interest to survive an equal protection challenge. Notably, it is beyond question that the Commonwealth has a legitimate interest in discouraging people from driving motor vehicles while under the influence of narcotics such as cocaine. Providing for stiffer penalties should a driver cause the death of another person while under the influence of a controlled substance, regardless of whether such influence impaired the driver, is certainly rationally related to the goal of discouraging people from driving under the influence.

Under the relaxed standard of scrutiny Lamonda concedes is applicable to this case, it is not the function of this Court to weigh the competing concerns and interests at stake in making this classification. *See Commonwealth v. McCoy*, 895 A.2d 18, 35 (Pa.Super.2006) ("If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction.") Rather, we must merely determine whether there is a rational relationship to a legitimate governmental interest. As we determine that there is such a relationship, we conclude that Lamonda's second issue on appeal merits no relief.

**3.** While we cite to Pennsylvania State Court decisions, they are all decisions that rest upon the Constitution of the United States.

■ In his third and fourth issues, Lamonda challenges the discretionary aspects of his sentence. "Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings." *Commonwealth v. Shugars*, 895 A.2d 1270, 1273–74 (Pa.Super.2006). "Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Id.*, at 1274.

The certified record reveals that Lamonda filed a post-sentence motion that challenged the discretionary aspects of the sentence imposed. We therefore proceed to address his argument on appeal.

■ "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa.Super.2004), *appeal denied*, 580 Pa. 695, 860 A.2d 122 (2004) (citation omitted). When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. *See Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa.Super.2005). "Two requirements must be met before we will review this challenge on its merits." *McAfee*, 849 A.2d at 274. "First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." *Id.* "Second, the appellant must show that there is a substantial question that the sentence imposed is not ap-propriate under the Sentencing Code." *Id.* That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Tirado*, 870 A.2d at 365.

■ We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists.[4] *See id.* "Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.*

■ In the present case, Lamonda's appellate brief contains the requisite 2119(f) concise statement, and, as such, is in technical compliance with the requirements to challenge the discretionary aspects of a sentence. In his Rule 2119(f) statement, Lamonda asserts that the trial court abused its discretion in applying an offense gravity score of 8 in calculating the guideline ranges, and that the trial court focused exclusively on the gravity of the offense in fashioning the sentence imposed. Appellant's Brief, at 23–24. These two challenges present substantial questions for our review. *See Commonwealth v. Archer*, 722 A.2d 203, 210–211 (Pa.Super.1998) (*en banc*) (claim that sentencing court used incorrect offense gravity score raises a substantial question); *Commonwealth v. Rossetti*, 863 A.2d 1185, 1194 (Pa.Super.2004) (failure of sentencing court to consider factors other than gravity of offense raises a substantial question).

4. Rule 2119 provides the following, in pertinent part:

. . .

(f) **Discretionary aspects of sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise state-ment of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.
Pa.R.A.P., Rule 2119(f), 42 Pa. Cons.Stat.Ann.

Turning first to Lamonda's contention that the trial court utilized an improper offense gravity score, we note that Lamonda concedes that the Sentencing Guidelines establish that the appropriate offense gravity score for a conviction of homicide by vehicle, concurrent with DUI, is 8. *See* Appellant's Brief, at 39. Therefore this argument rises or falls on Lamonda's argument that the Sentencing Guidelines violate his equal protection rights. As we have already concluded that they do not, we likewise conclude that this argument merits no relief.

▆▆▆▆ In his other challenge to the discretionary aspects of his sentence, Lamonda contends that the trial court imposed an unduly harsh sentence due to its failure to consider Lamonda's history, character, and rehabilitative needs. However, Lamonda concedes that the sentences imposed fall within the guideline ranges. *See* Appellant's Brief, at 44. We note that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.2010) (internal citations omitted). Furthermore, the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. *See id.*, at 171–172 (Pa.Super.2010).

Lamonda argues that the aggregate sentence imposed is "clearly unreasonable," in light of his circumstances. However, we note that the trial court acknowledged Lamonda's honorable and "very positive" service in the United States Marine Corps. N.T., Sentencing, 7/22/2009, at 10; 19. The trial court also considered the presentence report "in detail." *Id.*, at 18.

Finally, the trial court noted Lamonda's "current issues relative to depression." *Id.* Given this record, we cannot conclude that the trial court failed to consider Lamonda's history or rehabilitative needs. The standard guideline sentence imposed is not "clearly unreasonable." Accordingly, we conclude that Lamonda's final issue on appeal merits no relief.

As we determine that none of Lamonda's issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

BENDER, J., files a dissenting opinion.

DISSENTING OPINION BY
BENDER, J.:

I respectfully dissent. The Majority concludes that Thomas Lamonda failed to demonstrate a violation of Equal Protection where Lamonda's sentence for Homicide by Vehicle (HBV) was enhanced for DUI based on the presence of inert cocaine metabolites in Lamonda's bloodstream. In support of its conclusion, the Majority determines that "[p]roviding stiffer penalties should a driver cause the death of a person while under the influence of a controlled substance, regardless of whether such influence impaired the driver, is certainly rationally related to the goal of discouraging people from driving under the influence." Majority Op. at 370. In my opinion, the Majority's rationale begs the question, conflating the cause of the victims' deaths in this HBV case with the presence of cocaine metabolites in the defendant's bloodstream. The two are not the same except in the tendentious classification of Pennsylvania's Motor Vehicle Code, which pillories drivers as "under the influence" when in fact the metabolites in the their bloodstreams have no physiological "influence" whatsoever. Simply stated,

a driver whose blood shows the presence of *metabolites* is, by reason of immutable biological processes, *not under the influence* of the substance in question. The infirmity of a sentence enhancement assuming that he *is* under such influence should be clear.

Lamonda's argument on this point, exemplified in the following excerpt, is cogent and persuasive:

> In the instant matter, through a series of stipulated facts, Mr. Lamonda was found guilty on Count 3 of the Information—Driving Under the Influence of Alcohol or Controlled Substance. 75 Pa. C.S.A. § 3802(d)(1)(iii). Specifically, evidence was presented that at the time Mr. Lamonda's blood was drawn, there was reported to be in his blood a detectible level of Benzoylecgonine, a cocaine metabolite. This level was 300 nanog./ml. The summary of the report indicates that the examination of Mr. Lamonda's blood "gave no indications that the person was under the influence of detectible psychoactive substances, including alcohol, at the time the sample was obtained." Toxicology Report of Thomas Lamonda (Attachment 1 to Motion for Modification of Sentence). Nor is there any indication anywhere in the report that Mr. Lamonda was under the influence of detectible psychoactive substances, including alcohol, at the time of the accident.
>
> To link this DUI, which is a strict liability DUI, without any requirement of impairment nor any relation to the automobile accident at all, to the sentence for Homicide by Vehicle [c]ounts, when these were not Homicide by Vehicle–DUI related (75 Pa.C.S.A. § 3735) charges is violative of Mr. Lamonda's right to Equal Protection. There is no rational reason for this DUI to impinge in any way on the sentencing of Counts 1 and 2 on this Information. If the Commonwealth had felt that Mr. Lamonda was truly impaired by anything during the course of this incident, there is no doubt whatsoever that Mr. Lamonda would have been charged with Homicide by Vehicle–DUI related.
>
> The DUI in the instant matter was simply a strict liability DUI as Mr. Lamonda's blood showed the presence of a cocaine metabolite. The amount of the metabolite was in no way affecting Mr. Lamonda's ability to safely operate his motor vehicle and in no way contributed to the accident. To increase the Offense Gravity Score based solely on the fact that there was a detectible amount of cocaine metabolite but not an intoxicating amount of cocaine metabolite in Mr. Lamonda's blood has no rational relation to any legitimate government interest and is therefore a violation of Mr. Lamonda's right to Equal Protection.

Brief for Appellant at 36–37.

Consistent with Lamonda's argument, the record evidence compiled at trial sustains his assertion that the cocaine metabolite detected in his blood sample was not a cause of the HBV of which he was convicted; the forensic toxicology report which verified the presence of Benzoylecgonine characterized it merely as "an inactive transformation product." *See* Forensic Toxocology Report, 9/7/07, at 2 (unnumbered) (Attachment 1 to Lamonda's Post Sentence Motion). In addition, the Commonwealth introduced no evidence whatsoever to establish that an "inactive transformation product" could have any effect on Lamonda's performance prior to the collision. Accordingly, the evidence does not establish a causal relationship between the presence of the metabolite in Lamonda's blood and the counts of HBV of which he was convicted.

Given the absence of the foregoing causal link, I can discern no basis for im-

position of sentence with any DUI enhancement. Contrary to the Majority's conclusion, adding a DUI enhancement to a sentence for HBV bears no rational relationship to "the goal of discouraging people from driving under the influence[,]" Majority Op. at 370, where the DUI offense was based on a legal fiction and the asserted DUI had no causal relationship with the HBV. Consequently, imposition of sentence here based on the Offense Gravity Score for a conviction of HBV–DUI effectively assumes and penalizes conduct by the defendant that was neither alleged nor proven, *i.e.*, that the presence of an inert metabolite played a causal role in the deaths of the victims of the HBV. I find such a sentencing scheme untenable as a clear deprivation of the equal protection of the laws to which every defendant is entitled.

As the evidence established here, Benzoylecgonine is an "inactive transformation product" with no demonstrated effect on Lamonda's performance and no causal relationship with the HBV he committed. Consequently, his offenses should properly have been scored as they were charged, *i.e.*, merely as HBV—without relation to DUI—thereby incurring an Offense Gravity Score of 6 and a correspondingly reduced sentence. *See* 204 Pa.Code § 303.15. Nevertheless, the trial court did treat Lamonda's strict liability DUI as a sentencing factor in assessing the penalty for his HBV convictions. The court stated its rationale, in part, as follows:

> The presence of 300 nanograms per milliliter of a cocaine metabolite in [Lamonda's] system is still truly disturbing to the Court.
>
> In fact there has been no explanation offered whatsoever as to why that was in his system.

N.T., Sentencing, 7/22/09, at 20.

I find the presence of the metabolite in question irrelevant to Lamonda's commission of HBV; consequently, I find no basis for the trial court's stated concern and no validity in the sentence it imposed. Lamonda was not charged with HBV–DUI related and the Commonwealth introduced no evidence to establish that the presence of the metabolite had any causal relation to the collision. The fact that an inert metabolite is present in a defendant's blood at the time of his commission of vehicular homicide does not render the offense more serious in the absence of a causal link between the metabolite and the homicide—regardless of whether the metabolite's presence provides grounds for a separate DUI charge. Consequently, a court should not assume the higher Offense Gravity Score of 8 at sentencing, but should be constrained to address the HBV offense with the standard Offense Gravity Score of 6. The court's reliance here on the higher Offense Gravity Score was not rationally related to the HBV offense of which Lamonda was convicted because that HBV offense bears no relationship whatsoever to DUI. Accordingly, the court's action did violate Lamonda's constitutional right to Equal Protection.

Based on the foregoing, I would vacate Lamonda's judgment of sentence and remand for re-sentencing. Because the Majority declines this course, I must respectfully dissent.