J-S96018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | | |
| v. | | |
| | | |
| MARION NATE RUMPH | | |
| | | |
| Appellant | | No. 454 WDA 2016 |

Appeal from the Judgment of Sentence February 9, 2016
In the Court of Common Pleas of Venango County
Criminal Division at No(s):
CP-61-CR-0000715-2014

BEFORE:  BENDER, P.J.E., BOWES, J., AND SOLANO, J.

MEMORANDUM BY BOWES, J.:               **FILED JANUARY 26, 2017**

Marion Nate Rumph appeals from the judgment of sentence of seventeen to fifty years imprisonment that was imposed after he was convicted of dealing in the proceeds of an unlawful activity, possession of a controlled substance with intent to deliver ("PWID"), conspiracy to commit PWID, and criminal use of a communication facility.  We affirm.

The relevant facts are as follows.  In 2014, the Franklin City Police Department, the Oil City Police Department, and the Office of the Attorney General of Pennsylvania conducted a joint drug investigation in Venango County.  With the use of a confidential informant, investigators engaged in controlled buys of heroin from a residence in Venango County.  A search

warrant was obtained for the location, and police discovered heroin, drug-dealing paraphernalia, a firearm, and cash. A number of drug dealers were arrested, and they led investigators to Appellant as the source of their heroin. Police obtained a wiretap for Appellant's telephone, and, during an intercept, Appellant agreed to sell heroin to Christopher Carlson. Police were present when the drug transaction occurred on November 7, 2014, and arrested Appellant and Carlson. Appellant was charged with and convicted of the above-delineated four offenses.

At Appellant's trial, Christopher Carlson testified as follows. A relative arranged for him to meet Appellant, whom he knew as "Lucky," so that Carlson could begin selling heroin in the Franklin area. N.T. Trial, 11/17/15, at 156. In May 2014, Appellant agreed to sell heroin to Carlson for $100 a gram, and Carlson would re-sell that substance for between $150 and $200 a gram. When he first started dealing, Carlson would purchase between twenty to thirty grams of heroin a week from Appellant. Over the course of the six months that he dealt that substance, Carlson began to purchase about 100 grams a week from Appellant, who was Carlson's sole source for heroin. *Id*. at 159. Carlson, who was arrested in November 2014, was also aware that Appellant sold heroin to other drug dealers.

On appeal, Appellant presents these issues:

I. Did the trial court err in finding evidence sufficient to support a verdict that Appellant possessed, delivered, or conspired to deliver in excess of 1000 grams of heroin?

II. Did the trial court err in proceeding *in absentia* when the defendant did not appear for jury selection or trial?

III. Did the trial court abuse its discretion in rendering a manifestly excessive and disproportionate sentence without an adequate presentence investigation report?

Appellant's brief at 4.

Appellant's first allegation is that the evidence was insufficient to sustain a finding that he possessed in excess of 1,000 grams of heroin.[1]

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[1] Appellant notes that the Commonwealth stipulated that, at the time of Appellant's arrest, 7.91 grams of heroin were recovered.

***Commonwealth v. Scott***, 146 A.3d 775, 777 (Pa.Super. 2016).

Appellant's position on appeal is solely that there was not enough evidence to support a finding that he sold in excess of 1,000 grams of heroin. He suggests that the evidence therefore was insufficient to support his conviction of PWID and conspiracy to commit PWID. However, the weight of the heroin that Appellant sold is not an element of either PWID or conspiracy to commit PWID. Thus, Appellant's position on appeal has no relation to the sufficiency of the evidence supporting his convictions. Our analysis follows.

The information accused Appellant of committing a violation of 35 P.S. 780-113(30) and with conspiracy to commit 35 P.S. § 780-113(30). Under § 780-113 (30), the following is a prohibited act: "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. § 780-113(30). Thus, selling any amount of a controlled substance constitutes a violation of this provision. As noted, Appellant's sufficiency argument on appeal pertains to the weight of the heroin that he sold. However, the weight of the drugs sold is irrelevant for purposes of obtaining a conviction under § 780-113(30), and, concomitantly, a conviction for conspiracy to commit a violation of § 780-113(30).

We note that the jury was properly charged on the elements of conspiracy and a violation of § 780-113(30). N.T. Trial, 11/19/15, at 357-361. The evidence was sufficient to establish that Appellant committed the crimes in question. Mr. Carlson testified that he and Appellant conspired to sell heroin in the Franklin area from May to November 2014.

Additionally, the amount of heroin that Appellant sold did not affect the maximum sentence that Appellant faced. Under 35 P.S. § 780-113(f)(1), any person who violates § 780-113(30) "with respect to a controlled substance . . . classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years." 35 P.S. § 780-113(f)(1) (footnote omitted). Heroin is a Schedule I controlled substance that is narcotic. 35 P.S. § 780-104(1)(ii)(10); *Commonwealth v. Waddell*, 61 A.3d 198, 207 (Pa.Super. 2012). Therefore, the amount of heroin that Appellant sold did not increase his maximum sentence, which was set due to the nature of the controlled substance that he delivered. Since the weight of the heroin involved herein did not increase the maximum penalty that Appellant faced, that fact did not become an element of the crimes under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Therein, the Supreme Court ruled that, under the Sixth Amendment, any fact, other than a prior conviction, that increases a defendant's maximum sentence is an element of

the crime and must be submitted to a jury and proven beyond a reasonable doubt.

After being properly instructed on the elements of the crimes of conspiracy and PWID, the jury was then given a special interrogatory. It was told that **if** Appellant was found guilty of either conspiracy to commit § 780-113(30) or of § 780-113(30), then it was to determine how many grams of heroin were sold. *Id*. at 369 ("If you find the Defendant guilty on Count 2 or Count 3[, t]he additional question is, "And we further find that the amount of heroin was . . . ."). The jury was given the option of concluding that Appellant sold more a than 1,000 grams of heroin, at least 100 but less than 1,000 grams, between fifty and 100 grams, not less than ten nor more than fifty grams, and between one and ten grams. *Id*. at 369-370. The jury returned a finding that Appellant sold more than 1,000 grams of heroin, and it is this finding that Appellant challenges on appeal.

However, this determination, as analyzed above, had no bearing on the elements of the conspiracy and § 780-113(30) offenses. Rather, the finding as to the weight of the drugs impacted on the offense gravity score that was assigned to the two offenses. 204 Pa.Code § 303.15 (providing increased offense gravity scores as weight of drugs increases for purposes of PWID, and assigning an offense gravity score of thirteen when the weight of heroin in a PWID case exceeds 1,000 grams). The sentencing transcript confirms that the jury was given this special interrogatory for purposes of

- 6 -

determining the offense gravity score. At the sentencing hearing, the sentencing guidelines were placed on the record. On the second count, conspiracy to commit PWID, it was delineated that "because the jury found more than a thousand grams, that gives offense gravity score 13[.]" N.T. Sentencing, 2/9/16, at 3. For count three, the violation of § 780-113(30), the same was outlined. *Id*.

Thus, Appellant's first argument on appeal does not relate to the sufficiency of the evidence. Instead, Appellant's first issue on appeal pertains to the discretionary aspects of his sentence because it concerns the calculation of the offense gravity score for the PWID and conspiracy crimes. *See Commonwealth v. Lamonda*, 52 A.3d 365 (Pa.Super. 2012) (explaining that a sentencing court's application of an allegedly incorrect offense gravity score challenges the discretionary aspects of sentencing).[2] Additionally, sentencing enhancements increasing a recommended sentence under the sentencing guidelines, as opposed to facts triggering an increase

_____

[2] It is unclear why the jury was tasked with deciding the weight of heroin that Appellant sold since, as our analysis establishes, that question relates to the assignment of an offense gravity score. We also observe that, at sentencing, Appellant raised no objection to the sentencing court's use of an offense gravity score of thirteen for the PWID and conspiracy crimes. N.T. Sentencing, 2/9/16, at 3. Additionally, there is no indication that the question was raised in Appellant's post-sentence motion. Hence, any claim that the incorrect offense gravity score was used for PWID and conspiracy to commit PWID is waived. *Commonwealth v. Zirkle*, 107 A.3d 127 (Pa.Super. 2014) (discretionary aspects issue must be preserved through objection at sentencing or in post sentence motion).

in the maximum or minimum sentence, are not elements of the crimes in Pennsylvania because a court is not required to sentence within the recommended ranges. *Commonwealth v. Wilson*, 829 A.2d 1194, 1201–02 (Pa.Super. 2003).

Appellant's second contention relates to the fact that he was tried *in absentia*. The following facts are pertinent. After petitioning for a reduction in bail, Appellant posted bail and was released from prison. Jury selection was scheduled for and commenced on November 9, 2015. Appellant failed to appear at the beginning of that proceeding. Defense counsel, Wayne H. Hundertmark, Esquire, said that he spoke with Appellant and advised him to be present at 8:30 a.m. on November 9, 2015. N.T. Trial, 11/16/15, at 4.

When Appellant did not arrive on November 9th, Mr. Hundertmark contacted Appellant's girlfriend, Tishma Johnson, because Appellant never gave counsel a cell phone number to reach him. Counsel spoke with Ms. Johnson twice over the course of the morning of jury selection. Ms. Johnson told counsel both times that she was with Appellant and that they were on their way to the courthouse. Ms. Johnson represented that they were stuck in a traffic jam but would be present shortly. *Id*. Due to his anticipation of Appellant's impending arrival, Mr. Hundertmark delayed jury selection but then proceeded to conduct it. Appellant never arrived.

At the beginning of trial on Monday, November 16, 2015, Appellant again failed to appear. Someone from Mr. Hundertmark's office had spoken

with Ms. Johnson's father, who reported that Appellant was often at Ms. Johnson's home. Ms. Johnson's father also said that he had been at Ms. Johnson's residence on November 11, 2015, and that "it was cleaned out. She's gone, the kids are gone[.]" *Id*. at 7. Defense counsel also attempted to contact Appellant at his mother's home, as he frequently stayed with her. Appellant's mother would "not pick up the phone." *Id*. Mr. Hundertmark added that, after the jury was selected, he mailed Appellant a letter notifying Appellant "of the trial dates" to the address of Appellant's mother, "which is the only one I had for him." *Id*. at 10-11. A copy of the order scheduling trial for November 16, 2015, was also sent to Appellant in September 2015. It was mailed to the address that Appellant listed on documents that he utilized to obtain bail.

On November 16, 2015, the trial court found that Appellant was aware of the day that jury selection and trial was set to commence, and it concluded that Appellant was deliberately absent on both occasions. Since the jurors had been sworn in, the court proceeded to try Appellant *in absentia*. Appellant was later apprehended in Florida, and appeared at sentencing.

As we articulated in **Commonwealth v. Kelly**, 78 A.3d 1136, 1141 (Pa.Super. 2013) (footnote omitted), "Pursuant to Article I, § 9 of the Pennsylvania Constitution, and the Sixth Amendment of the federal constitution as applied to the states via the Fourteenth Amendment due

process clause, defendants have the right to be present during their criminal trial." The constitutional right to be present for trial is not absolute and "a defendant may, by his actions, waive this right expressly or implicitly." *Kelly*, *supra*, at 1141. Indeed, "it is long-established that where a person absents himself from trial, his jury trial right is not infringed." *Id*. at 1142. The Commonwealth has "the burden of showing by a preponderance of the evidence that the defendant is absent 'without cause' and that he knowingly and intelligently waived his right to be present." *Id*. (citation omitted). If the Commonwealth proves that a defendant was aware of the trial date and failed to come, then it has satisfied its burden. *Id*. The rules of criminal procedure embody these precepts:

> (A) The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. **The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial**, including the return of the verdict and the imposition of sentence.

Pa.R.Crim.P. 602 (emphasis added).

Additionally, when a defendant has been released on bail, as Appellant was herein, the released defendant has certain obligations:

> A defendant who is released on bail before trial gives the court his or her assurance that he or she will stand trial and submit to sentencing if found guilty. Unless the defendant is prevented from attending the proceedings for reasons beyond his or her control, then the defendant is expected to be present at all stages of the trial. A defendant owes the court an affirmative duty to advise it if he or she will be absent. If a

defendant has a valid reason for failing to appear, for example, if he or she has a medical emergency or is called to leave because of a family emergency, then the defendant can alert the court personally or through counsel of the problem.

***Kelly***, ***supra*** at 1143 (citation omitted).

Herein, the record establishes that Appellant had actual notice of the date of jury selection and trial. He was on bail and violated his duty to advise the court as to why he could not appear. Appellant actually had absconded, was captured in Florida, and was returned to face sentencing herein. Thus, we affirm the trial court's conclusion that Appellant voluntarily absented himself from trial without cause, and waived his right to be present. ***Id***. It did not err in conducting the trial without Appellant's presence.

Appellant's final position is that his sentence was so manifestly excessive as to constitute too severe a punishment and that the presentence report was inadequate since he was not interviewed so that he could have input into its preparation. Initially, we observe,

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial

question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa.Super. 2014) (citations omitted).

The present appeal was timely, the issues were preserved in a post-sentence motion,[3] and Appellant's brief contains the concise statement of the reasons relied upon for allowance of appeal from the discretionary aspects of the sentence imposed. Appellant's brief at 23. He complains that the sentence was manifestly excessive given the weight of the heroin actually recovered and that the presentence report was inadequate.

Appellant's first allegation does not raise a substantial question. The sentencing transcript reveals the following. Appellant had a prior record score of three. The offense gravity scores were as follows: an eight for count one, dealing in proceeds of a corrupt organization; thirteen for count two, PWID; thirteen for count three, conspiracy to commit PWID; and five for count four, use of a communication facility. The applicable guideline ranges therefore were eighteen to twenty four months for count one,

_____

[3] While Appellant's post-sentence motion is not contained in the record, the order denying it is present therein. Additionally, in its opinion, the trial court indicated that Appellant did file a post-sentence motion requesting that his sentence be reconsidered and that he raised the issues of the inadequacy of the presentence report and the excessiveness of his sentence. Trial Court Opinion, 8/3/16, at 4.

seventy-eight to ninety months for counts two and three, and six to sixteen months for count four.

Appellant received a sentence on each crime that was within the standard range of the sentencing guidelines: twenty-four months to forty-eight months on count one, seven and one-half years (ninety months) to fifteen years on counts two and three, and sixteen to sixty months on count four. The sentences on counts two and three were imposed consecutively, but the remaining sentences were made concurrent. The sentencing court, in imposing this sentence, took into account that Appellant had two prior felony drug convictions and that he fled the jurisdiction to escape punishment.

Since Appellant received a standard range sentence on each offense, his complaint thus actually relates to the fact that he was sentenced consecutively as to counts two and three. We articulated in *Zirkle*, *supra* at 133-34 (citations and quotation marks omitted),

> [T]he imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Long standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently.

However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

We do not view the present case as one of these extreme circumstances where the aggregate sentence appears to be excessive in light of the conduct in this case. Appellant had a prior history of drug trafficking convictions. The evidence established that he sold large quantities of heroin to drug dealers in Venango County. Heroin is a highly dangerous substance that has been a growing source of overdose deaths in this country in recent years. Appellant obtained a reduction in his bail and then fled to Florida to avoid punishment. Thus, we do not view the consecutive nature of the sentence imposed as excessive in light of the criminal conduct in this action. Hence, Appellant's first contention fails to raise a substantial question.

We do, however, view the position that the sentencing court's presentence report was inadequate as presenting a substantial question. It is axiomatic that:

> The first responsibility of the sentencing judge is to be sure that he has before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a [presentence] report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not

limited to those of record, as well as the defendant's personal history and background. While the extent of the pre-sentence inquiry may vary depending on the circumstances of the case, a more extensive and careful investigation is clearly called for in felony convictions, particularly where long terms of confinement are contemplated. The court must exercise the utmost care in sentence determination if the defendant is subject to a term of incarceration of one year or more, or the defendant is under twenty-one or a first-time adult offender.

*Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa.Super. 2000) (citations omitted). Given the importance of a presentence report and that the court must consider a defendant's background, an averment that the report was inadequate raises a substantial question.

However, we conclude that any averment that the presentence report was insufficient is waived. First, the fact that Appellant was not interviewed and had no input in the document's preparation was due to his voluntary absence from this jurisdiction. In addition, at sentencing, the court noted that a presentence report "was prepared in this case" and asked counsel if he had "an opportunity to review it with [his] client." N.T. Sentencing, 2/9/16, at 2. Counsel responded both that he had reviewed the report and that he had no corrections. Hence, Appellant expressly consented to allow sentencing to proceed with the presentence report as prepared. Moreover, Appellant articulated to the court that he was sorry that he fled and informed the court that he had family and children. No relief is due on this claim.

The Commonwealth's Petition for Extension of Time in Which to File a Brief is denied as moot. Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/26/2017