J-A19039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHERMAN E. LOWRY | : | |
| | : | |
| Appellant | : | No. 1034 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 13, 2023
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000795-2021

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED: OCTOBER 21, 2024**

Appellant, Sherman E. Lowry, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas on July 13, 2023. After our review, we affirm.

The relevant facts and procedural history are as follows: Appellant was convicted of Arson Endangering Property - Reckless Endangerment of an Inhabited Building and Criminal Mischief after a jury trial beginning May 31, 2023, following a fire set at 972 Purdue Mountain Road, the home of his estranged wife and children.

At trial, Katherine Lowry, Appellant's wife who was in the process of divorcing him, testified to the events leading up to the fire at her home. At

---

[*] Former Justice specially assigned to the Superior Court.

approximately 5:30 PM on April 4, 2019, she left the house to drive her children to baseball practice. N.T., 6/1/23, at 60-62. The family dog was inside the home and the house was secured when the family left. When they returned home shortly before 8:00 PM and entered the driveway, the house was smoking. She saw flames upon opening the door. N.T., 6/1/23, at 105. The family dog was outside, although the doors were shut. N.T., 6/1/23, at 83. The video surveillance system had been unplugged and its SIM card component necessary for monitoring was removed. N.T., 5/31/23 PM, at 125. Photos of the family had been shattered on the floor. N.T., 6/1/23, at 71-72.

Hours after the fire, Mrs. Lowry checked the gun safe which, days earlier, had contained Appellant's firearms. It had been emptied. N.T., 6/1/23 at 85-89. In fact, Appellant had been on probation until April 3, 2023, for a violation of a Protection from Abuse (PFA) order against him and kept his guns in the locked safe during that time. N.T., 5/31/23 PM, at 86-87. Appellant maintained that he did not possess those weapons during his probationary period and admitted under oath that he retrieved his guns after his probationary period ended. Commonwealth Ex. 49. The fire occurred and Mrs. Lowry noticed the missing weapons on April 4, 2023, the day after his probationary period ended. Appellant was found to be in possession of the same firearms during an interaction with law enforcement about a month after the fire. N.T., 6/1/23, at 211-14.

Appellant initially told Mrs. Lowry that he had an "alibi" for the time of the fire; he stated he has been with a friend, Jen Corl, on Jacksonville Road. He specifically denied being at the house at the time of the fire. N.T., 6/1/23, at 90. He told the lead investigator, Trooper Jeremy Pollick, that he had not been to 972 Purdue Mountain Road in three days. N.T., 6/1/23, at 142. He told the fire marshal, Trooper Steven Griffith, that he was not at that location on the date of the fire. N.T., 5/31/23 PM, at 116. He told the Attorney hired by Erie Insurance, Todd Narvol, that he was not at the home on the date of the fire. Commonwealth Ex. 49.

However, phone records reveal that Appellant left Jen Corl's residence by 6:44 PM on April 4, 2019. Commonwealth Ex. 185. Ron Heltman, Mrs. Lowery's neighbor, testified that on April 4, 2019, he observed Appellant's black BMW leave 972 Purdue Mountain Road approximately a half-hour before the fire. N.T., 6/1/23, at 129-30. An analysis of Appellant's mobile phone and cell tower connection data showed that Appellant had been at the home on April 4, 2019 around the time of the fire. Additionally, Appellant's phone, set to automatically connect to familiar WIFI networks, connected to the WIFI in Mrs. Lowry's home at 7:23 and 7:25 PM on the night of the fire. N.T., 6/1/23, at 91; Commonwealth Ex. 185. The records show Appellant's device move to his sister's home at 7:32 PM, which is approximately 100 yards from Mrs. Lowry's home. N.T., 5/31/23 PM, at 118. The phone connects to Mrs. Lowry's WIFI again at 7:34 PM. Commonwealth Ex. 185.

Appellant testified that he drove to his sister's home on the night of the fire and simply turned around in her driveway without stopping. N.T., 6/2/23, at 127-28. He stated that he lied about having been to 972 Purdue Mountain Road because he did not want to get in trouble for violating the PFA forbidding him from being there. N.T., 6/2/23, at 109-11.

Practically, the fire could have been started any time between when Mrs. Lowry and the children left around 5:30 to shortly before 8:00 when they arrived home. One of the investigators, Fire Marshal Steven Griffith, concluded that the damage was consistent with a fire that burned for a short period of time. N.T., 5/31/23 PM, at 162. Bradley Schriver, an expert on fire cause and origin, testified that in his opinion, the fire started closer to 7:50 PM. N.T., 6/1/23, at 45-46. He confirmed that the damage was more consistent with a fire that started around 7:30 than a fire that would have been set closer to 5:15 PM. N.T., 6/1/23, at 47.

Trooper Griffith stated that the fire was started on the living room couch. N.T., 5/31/23 PM, at 141-150. He testified that there was nothing in the home that could have caused the fire other than a human hand, and that things do not combust on their own. N.T., 5/31/23 PM, at 148-50. Mr. Schriver also testified that the fire was started on the living room couch. N.T., 6/1/23, at 14-25. He concluded, based on his twenty-five years of experience and over 3000 fire investigations, that the fire was deliberately set by a human. N.T., 6/1/23, at 24. Mrs. Lowry's testimony confirmed that there were no

electronics, candles, lithium batteries, alkaline batteries, incense sticks, craft projects, science projects, or anything else that could have started the fire. N.T., 6/1/23, at 72-75. She also testified that Appellant had suggested setting fire to the home and specifically the living room couch in moments of rage in the past. N.T., 6/1/23, at 90-93.

Appellant's expert, Greg Agosti, testified for the defense and concluded that while the fire began on the living room couch, the cause of the fire was undetermined. N.T., 6/2/23, at 78; 17-18. He said there is no way to determine what time between 5:15 and 7:55 the fire began. N.T., 6/2/23, at 93. He criticized the Commonwealth's experts' process of elimination method of determining the cause of the fire as inconsistent with the scientific method. N.T., 6/2/23, at 30. He conceded, however, that the dog having been let outside and the safe having been emptied suggested a human actor was in the home. N.T., 6/2/23, at 90-91.

At the conclusion of the trial, Appellant was found guilty and sentenced on July 13, 2023 to seven and one-half (7.5) months to fifteen (15) months incarceration. He was ordered to pay restitution to Katherine Lowry in the amount of $1294.66, and to Erie Insurance in the amount of $369,269.23. Sentencing Order, at ¶ 3. Appellant did not file any post-sentence motions but filed a notice of appeal on July 20, 2023. Appellant filed a concise statement pursuant to Pa.R.A.P. 1925(b) on August 21, 2023. This appeal follows.

Appellant raises two issues for our review:

I. IS THE EVIDENCE PRESENTED BY THE COMMONWEALTH IN THIS CASE SUFFICIENT OF STAYING A CONVICTION OF ARSON ENDANGERING PROPERTY - RECKLESS ENDANGERMENT OF AN INHABITED BUILDING OR CRIMINAL MISCHIEF?

II. WAS THERE SUFFICIENT EVIDENCE SUBMITTED TO THE COURT TO SUSTAIN THE COURT'S FINDING OF RESTITUTION IN THE AMOUNTS OF $1,204.66 TO KATHERINE LOWRY AND $369,269.23 TO ERIE INSURANCE?

Appellant's Br. at 4.

Our standard of review for Appellant's instant claims challenging the sufficiency of the evidence is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

**Commonwealth v. Brockman**, 167 A.3d 29, 38 (Pa. Super. 2017) (citation omitted). "Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Sanchez**, 36 A.3d 24, 37 (Pa. 2011) (citing **Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006)).

- 6 -

Appellant was found guilty of Arson Endangering Property — Reckless Endangerment of Inhabited Buildings and Criminal Mischief. Under the arson statute, a person commits Arson Endangering Property if he intentionally starts a fire, whether on his own property or that of another, and if he recklessly places an inhabited building or occupied structure of another in danger of damage or destruction. 18 Pa.C.S.A. § 3301(c)(2).

A person is guilty of Criminal Mischief if he, *inter alia*, and relevantly to this matter: damages tangible property of another intentionally, recklessly, or negligently in the employment of fire; intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or intentionally damages the real or personal property of another. 18 Pa.C.S.A. § 3304(a)(1), (3), (5).

Thus, the Commonwealth needed to establish beyond a reasonable doubt that (1) there was a fire, (2) it was willfully and maliciously set, and (3) that defendant set the fire. **Commonwealth v. Trafford**, 459 A.2d 373, 374 (Pa. Super. 1983). A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. 18 Pa.C.S.A. § 302(b)(3). The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. **Id**.

In Appellant's first issue, he argues that there was no direct or circumstantial evidence that (1) the fire was incendiary or (2) that Appellant set the fire. Appellant's Br. at 18. Appellant raises concerns about the timing of the fire, indicating that all the fire cause and origin experts agreed the house fire could have started any time between 5:30 and 8:00 PM, but Appellant's vehicle was only seen near the house at 7:30 PM. Appellant's Br. at 24. Appellant further argues that the cause of the fire was undetermined, and that the Commonwealth presented "no credible evidence that the fire was incendiary, that it was set by a human being." Appellant's Br. at 27.

The evidence was sufficient for the jury to conclude that the fire was set by Appellant and that he did it intentionally, causing the damage that resulted. On the date of the fire, Appellant drove his BMW to 972 Purdue Mountain Road, a house from where his presence was legally forbidden, at a time where Appellant knew the house would be unoccupied by his estranged wife and children. His phone records place him inside the house at 7:23 PM when the home's WIFI network connected automatically to his phone. The Commonwealth experts testified that the fire likely started closer to 7:30. A locked safe in the home which contained Appellant's firearms had been emptied immediately before the fire, and Appellant was found in possession of those firearms, indicating his presence in the home before the fire. The home's video surveillance system had been disabled from within the home. Photos depicting Appellant's family—which he was losing in the divorce—had

been shattered on the floor, which the jury could have interpreted as evidence of Appellant's state of mind and intent. The family dog had been let outside the home before the fire was started which saved it from the fire. No cars besides Appellant's were seen at the house, no other phones were present at the location, and no one besides Appellant was in the home between the family leaving at 5:30 and the fire being discovered upon the family's return shortly before 8:00 PM.

Appellant includes caselaw in his brief that suggests that an individual's presence at the scene of a fire coupled with inconsistent statements about his whereabouts are insufficient to establish guilt that he committed arson. Appellant's Br. at 32-33 (quoting *Commonwealth v. Trafford*, 459 A.2d 373, 375 (Pa. Super. 1983)). The facts of *Trafford* are distinguishable to the facts here. In that case, the defendant was seen by a firefighter coming out of an apartment clubhouse where a fire was reported to have been started. *Id.* at 374. However, the defendant was employed as the maintenance man for the apartment complex and his beeper was called by the switchboard operator of the town's answering service to check on the apartments after she received an anonymous report of a fire there. *Id*. Thus, he had a valid reason to be there. Before checking on the fire, the defendant called the town police dispatcher and said he "would be coming from home," but told other firefighters that he responded to his beeper from a phone booth. Then at trial

he testified that he was coming from a sports bar when his beeper was paged by the switchboard operator. *Id.* at 375.

Here, Appellant was not a resident of the house, nor was he employed to service the house. In fact, Appellant had a PFA preventing him from being at the house. Thus, unlike the defendant in *Trafford*, Appellant had no valid reason to be at the location of the fire. Additionally, the *Trafford* defendant's inconsistent statements regarding his whereabouts leading up to the fire was not sufficient evidence to uphold the conviction because the defendant had no burden to explain where he was before the fire began. Here, however, Appellant initially denied that he had been to the house at all on the day of the fire, when eyewitness testimony and cellphone records put Appellant at the scene during the time the fire was started. A jury could have reasonably inferred that Appellant having had no valid reason to be at the house and having lied about being there at the time of the fire was circumstantial evidence that Appellant was there to set the fire.

Appellant further challenges the Commonwealth's experts' conclusions as speculative. Appellant's Br. at 28. He asserts that their use of language like "more than likely," "suspicious arson," and "possibly" are not concrete enough to support a finding of guilt beyond a reasonable doubt. *Id.* Appellant's expert asserted at trial, as Appellant does now in his brief, that the Commonwealth experts based their opinions on a lack of evidence; the investigators inappropriately concluded the fire must have been intentionally set by process

of elimination[1] because they could not find an innocuous ignition source. Appellant's Br. at 29-30.

> [A]n expert must base the substance of his opinion on a reasonable degree of certainty instead of mere speculation, but need not use the magic legal words that his opinion is to a "reasonable degree of medical certainty," as long as his opinion is sturdy. Expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

***Commonwealth v. Fitzpatrick***, 316 A.3d 987, 1004 (Pa. Super. 2024) (internal citations omitted). "Whether an expert's testimony is persuasive beyond a reasonable doubt is a matter for the jury's consideration."

***Commonwealth v. Stallworth***, 781 A.2d 110 (Pa. 2001).

Here, the Commonwealth and defense experts all agreed the fire was ignited on the family couch. Commonwealth expert Trooper Steven Griffith indicated that there was nothing in the home that could have caused the fire besides a human—no evidence indicating an accident. Based on twenty-five years of investigating more than 3000 fires, fire expert Bradley Schriver testified for the Commonwealth that he believed the fire was set deliberately after he ruled out all other potential ignition sources. We note that the National Fire Protection Association has not discounted the method of process of

---

[1] The process of elimination method is also called the "negative corpus" method.

elimination in determining the cause of a fire. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1103 n.7 (Pa. Super. 2020). The testimony that the investigators found no evidence that the fire was natural or accidental, coupled with the additional evidence that only a human could have let the dog out, disabled the surveillance system, and empty the locked safe, creates a reasonable inference that a human started the fire deliberately. Given that Appellant was the only human in the home at or around the time the fire started, the jury could have reasonably inferred that the fire was incendiary, and that Appellant set it, causing the damage that resulted. Therefore, we find that the Commonwealth's evidence was sufficient to support his convictions.

Appellant's second issue is that there was insufficient evidence presented to support the court's finding of restitution. Appellant's Br. at 36. At trial, Katherine Lowry testified that the retail cost of the couch on which Appellant ignited the fire was $2,300. N.T., 6/1/23, at 94. Todd Narvol, on behalf of Erie Insurance, testified that the cost of restoration for the damage caused by the fire covered by Erie Insurance was about $370,000.[2] N.T., 5/31/23 PM, at 72. At sentencing, the trial court awarded Katherine Lowry

---

[2] This Court has held that the record supports the amount of restitution ordered where the victim testified about the value of the loss the victim suffered as a result of the defendant's actions and the trial court found the victim's testimony credible. *See Commonwealth v. Rush*, 909 A.2d 805, 810 (Pa. Super. 2006). Here, the trial court noted at sentencing that the testimony upon which the restitution amount was based "was consistent with the claim for the structural and the content damages paid by Erie Insurance." N.T., 7/13/23, at 20.

$1,294.66 in restitution for the couch, and Erie Insurance $369,269.43 for the damage. Sentencing Order, at ¶ 3.

> The following principles govern our review from a challenge to the imposition of restitution as part of a sentence. "[T]he primary purpose of restitution is rehabilitation of the offender by impressing upon [him] that [his] criminal conduct caused the victim's loss or personal injury and that it is [his] responsibility to repair the loss or injury as far as possible." **Commonwealth v. Solomon**, 2021 PA Super 43, 247 A.3d 1163, 1170 (Pa. Super. 2021) (*en banc*) (internal citation and quotations omitted); **see also** 18 Pa.C.S.A. § 1106(c)(1) (requiring the court to order "full restitution . . . so as to provide the victim with the fullest compensation for the loss"). As it relates to property damage, restitution "can be made by either the return of the original property or the payment of money necessary to replace, or to repair the damage to, the property." **Solomon**, 247 A.3d at 1170 (internal citation and quotations omitted). Challenges to a restitution order may go to the legality of the sentence, *i.e.*, the trial court's statutory authority to impose restitution under section 1106(c)(1), or the discretionary aspects of the sentence, *i.e.*, the trial court's determination of the amount of restitution. **See Commonwealth v. Weir**, 662 Pa. 402, 239 A.3d 25, 38 (Pa. 2020).

> A defendant's "discontent with the amount of restitution and the evidence supporting it is a challenge to the sentencing court's exercise of discretion" and constitutes a challenge to the discretionary aspects of the sentence. **Id**. When a court imposes restitution as part of a sentence, "there must be a direct nexus between the restitution ordered and the crime for which the defendant was convicted." **Solomon**, 247 A.3d at 1170 (internal citation and quotations omitted). "[D]amages which occur as a direct result of the crimes are those which would not have occurred but for the defendant's criminal conduct." **Commonwealth v. Poplawski**, 2017 PA Super 78, 158 A.3d 671, 674 (Pa. Super. 2017) (internal citation omitted).

> An appellant seeking to challenge the amount of restitution as excessive or unreasonable must invoke this Court's jurisdiction to consider the discretionary aspects of the amount of restitution by: (1) preserving [his] claims at the time of sentencing or in a post-sentence motion, (2) filing a timely notice of appeal, (3)

including a statement of reasons for allowance of appeal pursuant to Pa.R.A.P. 2119(f) in [his] brief, and (4) raising a substantial question for review. **See Solomon**, 247 A.3d at 1167.

**Commonwealth v. Harvey**, 317 A.3d 579, 2024 Pa. Super. Unpub. LEXIS 608, *5-7 (Pa. Super. 2024).[3] If an appellant fails to challenge the discretionary aspects of a sentence either by presenting a claim to the trial court at the time of sentencing or in a post-sentence motion, then the appellant's challenge is waived. **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted), appeal denied, 75 A.3d 1281 (Pa. 2013).

Here, Appellant challenges the amount of restitution and its support in the record and thus is challenging the discretionary aspects of sentencing. Appellant attempts to frame the issue in his reply brief as challenging the legality of his sentence, Appellant's Reply Br. at 10, but Appellant at no place in his brief or reply brief asserts that the trial court lacked the authority to order restitution. His issue is with the trial court's finding that Katherine Lowry's and Todd Narval's testimony estimating the cost of the damage was credible.

Appellant failed to preserve this issue for our review. At sentencing, the trial court stated it would order restitution and told Appellant he had thirty

---

[3] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.  We find guidance in the unpublished memorandum cited **supra** and find it to be persuasive in this matter.

days "if you wish to challenge" the restitution, to which Appellant's counsel replied, "we do." N.T., 7/13/23, at 20. Appellant's counsel further stated that he had spoken with Appellant who "does intend to file post-sentence motions." *Id.* at 22. Appellant failed to do so; he did not file any post-sentence motion or otherwise challenge the restitution as directed by the court. His counsel's statement that Appellant intends to file a challenge to the restitution falls short of a proper objection to the discretionary aspects of his sentence. He also did not include in his brief a Rule 2119(f) statement. Thus, Appellant has not invoked this court's jurisdiction to address his second claim. Accordingly, we affirm.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/21/2024