J-A09038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY JOHN LONG | : | |
| | : | |
| Appellant | : | No. 877 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 28, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001206-2023

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: June 11, 2025**

Anthony John Long ("Long") appeals from the judgment of sentence imposed following his convictions for drug delivery resulting in death (Fentanyl), criminal use of a communication facility, possession of drugs with intent to deliver (Fentanyl), and possession of drug paraphernalia.[1] We affirm.

In December 2021, Long set up a drug transaction with the victim, Erika Mininger ("Mininger") via cell phone, and he subsequently delivered and sold to Fentanyl to her and to her roommate at their apartment. After ingesting the Fentanyl, Mininger overdosed and died. Police arrested Long and charged him with the above-referenced offenses. The matter then proceeded to a jury

---

[1] **See** 18 Pa.C.S.A. §§ 2506(a), 7512(a); 35 P.S §§ 780-113(a)(16), (30), (32).

trial. The trial court summarized the evidence and testimony presented at trial as follows:

> The evidence adduced at the three-day trial in May of 2024 established Mininger was staying in a one-bedroom apartment she shared with a friend, Joshua Cullison [("Cullison")], in Girard Borough, County of Erie, Pennsylvania. At trial, the Commonwealth presented the testimony of Cullison, who was the only eye[-]witness to testify concerning the events leading to Mininger's death.
>
> Cullison's testimony established [Long] sold separate orders of Fentanyl to Mininger and Cullison on the evening of December 15, 2021. Following delivery to Mininger and Cullison at their apartment their respective drug orders, [Long] left. Cullison retired to his bedroom to get high on the drugs he purchased while entertaining himself with the video game, Xbox, with the aid of a headset. Cullison's bedroom was separated by a curtain from Mininger's sleeping quarters on the couch in the living room. Mininger, meanwhile, remained, in the living room and got high.
>
> During the course of the evening and into early morning hours, Cullison periodically removed his headphones to listen to what was going on in the living room. On one such occasion, Cullison heard Mininger cry out and say she spilled her bag. Cullison looked out and observed her as she searched for drugs on the carpet floor. Cullison returned to his room and resumed playing Xbox.
>
> By the early morning hours of December 16th, Seth Adams [("Adams")], a romantic interest of Mininger, arrived at the apartment. According to Cullison, after [Long] delivered the drugs that evening, Mininger invited Adams over. This was not surprising to Cullison who testified Mininger had a "crush" on Adams and would frequently entice him to the apartment by offering him free drugs. Cullison left Mininger and Adams alone in the living room. During the early morning, when Cullison removed his headphones for another check-in, he heard Mininger snoring loudly. Cullison looked into the living room and observed her sound asleep on the floor in "doggie style" position, still snoring. Cullison saw Adams sitting in a chair and told Adams he should leave. Adams agreed. Cullison walked Adams out, locked

- 2 -

the door and returned to the living area where Mininger remained sound asleep on the floor, snoring.

Cullison attempted to rouse Mininger to get her onto the couch. When his efforts were met with no success, next he took a video of Mininger while she was sleeping on the floor and snoring loudly. Cullison testified he took the video in order to memorialize Mininger's snoring so he could later prove to her that she really was a loud snorer. During this video which was played for the jury at trial without objection, the victim was heard snoring and Cullison muttered out loud, "Ridiculous."

Next, Cullison returned to bed. When he awoke in the morning, he found Mininger cold to the touch. Cullison, in panic-mode, ran to his neighbor's house, and had, the neighbor call the ambulance. Medical personnel arrived. Officer Ryan Zeurn [("Officer Zeurn")], a patrol officer with the Girard Bureau of Police and the initial responding officer, arrived next.

During his trial testimony, Cullison was tearful, remorseful and visibly shaken. He testified he regretted taking the video of Mininger as she snored, and did it only to prove to her she snored loudly when she slept, a topic which was somewhat of "an ongoing thing" between them.

* * * *

Eric Vey, M.D. [("Dr. Vey")], the forensic pathologist who reviewed and opined on toxicology findings from [Mininger's] postmortem blood sample, concluded the cause of death was fentanyl toxicity. Though there were multiple substances in [] Mininger's system including methamphetamine and amphetamine, these substances were well below the toxic range. [Dr.] Vey opined that, but-for the presence of [F]entanyl in [Mininger's] system at the levels recorded, . . . Mininger would not have died.

* * * *

Detective Sergeant [Matthew] Benacci interviewed [Long]. He also reviewed the results of the cell phone extractions including communications between [Long] and [Mininger] at relevant times. Detective Benacci also testified about communications [Long] had with a third[-]party concerning changes which [Long] implemented in his practice of selling Fentanyl following Mininger's

- 3 -

death. Based upon his review of the data from the cell phone extractions and the interviews, Detective Benacci determined [Long] sold Fentanyl to Mininger on the night she overdosed and died.

Trial Court Opinion, 10/10/24, at 1-5 (footnotes and citations omitted).

At the conclusion of trial, the jury found Long guilty of the above-referenced offenses. On June 28, 2024, the trial court sentenced Long to an aggregate term of six and one-half to thirteen years in prison. Long filed a post-sentence motion which the trial court denied. Long then filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Long raises the following issues for our review:

1. The verdicts in this case were against the weight of the evidence in this case based on the testimony of a co-defendant who admitted that he lied and the evidence that the victim received drugs from others.

2. The sentence imposed in this case was manifestly excessive and clearly unreasonable based on the fact that [Long] had a prior record score of zero and the evidence in this case did not clearly show [Long's] involvement or intent regarding the crime.

Long's Brief at 2 (numbering added).

In his first issue, Long contends that the verdict was against the weight of the evidence. As our Supreme Court has explained:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same

- 4 -

facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. ***See Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court. ***Id***. at 546.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim ***is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence***. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).

Long argues that the evidence regarding the source of the Fentanyl was based almost entirely on the testimony of Mininger's roommate, Cullison. Long claims that Cullison testified on the record that he lied outside of court, and also lied in court regarding whether he lied to authorities, an act for which he had been charged with a crime.[2] According to Long, Cullison also testified that, in his initial interview with law enforcement, he did not disclose Long's name, and he was not truthful with the police regarding who might have been present in the apartment the night of the incident. According to Long, Cullison made various conflicting statements regarding whether the voice he heard in the living room belonged to Long, Adams, or others. Long claims that it was only when Cullison realized he could be in trouble for hiding Mininger's phone that he indicated he thought he heard Long's voice.

Long contends that Cullison's testimony was so conflicting that it was incredible. Long asserts that Cullison testified that he had money ($5000) to use to buy drugs and that Mininger did not have money. Although Cullison testified that he did not give Mininger drugs, Long suggests that Mininger could have taken drugs from Cullison.

---

[2] The trial court explained that Cullison was charged with tampering with evidence by attempting to hide Mininger's phone under a sofa. *See* Trial Court Opinion, 10/10/24, at 8.

Long concedes that the detectives were able to find the text messages on Mininger's phone indicating that she purchased the Fentanyl from Long. Indeed, he explains that Officer Zuern testified that this case had "gone cold" until the District Attorney's detective was able to find the text messages on Mininger's phone indicating that she had purchased drugs from Long. Nonetheless, Long points to Cullison's testimony that Long only sold Mininger thirty dollars' worth of Fentanyl, which Long asserts would be an insufficient amount to put Mininger in the condition she was in.

Finally, Long contends that there was testimony provided that drugs were obtained from and available to Mininger from other sources. Long claims that Cullison testified during trial that Mininger left the apartment to purchase drugs from another individual. Long additionally claims that Cullison further testified that Adams was a drug user, and Cullison didn't know whether or not Adams brought drugs with him to the apartment. Long points out that he presented evidence of text messages from Mininger where she conversed with others about purchasing drugs from them. Long posits that Mininger may have ingested additional Fentanyl that killed her either before or after Mininger used the Fentanyl that purportedly was provided to her by Long.

The trial court considered Long's challenge to the weight of the evidence and determined that it lacked merit. The court reasoned:

> As to the bald claim the verdict was against the weight of the evidence because the jury could not have found [Long] was the source of the drugs that killed the victim, this claim must . . . fail. First, . . . the court can only infer [Long] is referring to

Cullison's testimony on cross-examination that, before [Long] came to the apartment and sold [Mininger] drugs, [she] had left the apartment to purchase "dope" at the Lake Street Apartments. However, no further testimony was elicited from Cullison about this. Whether in fact [Mininger] purchased drugs from another source and the nature and quantity of any such drugs was not established, to the best of the court's recollection and without scouring numerous pages of trial testimony to determine whether any basis exists for the claim. The conclusory, bald averment the jury could not have found it was [Long] who sold Mininger the Fentanyl upon which she overdosed is wholly lacking in merit. The jury was free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. This weight claim, like all others, concedes the evidence was sufficient to convict for the offenses. The verdicts do not shock one's sense of justice and are amply supported by the evidence . . ..

Trial Court Opinion, 10/10/24, at 8 (unnecessary capitalization and citations omitted).

Based on our review, we discern no abuse of discretion by the trial court in denying Long's challenge to the weight of the evidence. As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *See id*.

Here, Long is essentially asking this Court to reweigh the evidence to accord no weight to the testimony provided by Cullison. This, we cannot do. *See Talbert*, 129 A.3d at 545 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the jury, which

was free to believe all, part, or none of the evidence and testimony and to determine credibility).  Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim.  In this regard, we discern no abuse of such discretion.

Importantly, we note that the trial court judge determined that Long's guilty verdict did not shock its conscience.  We further emphasize that in considering Long's weight challenge, the trial court noted that the jury was free to believe all, part, or none of the evidence presented, and was therefore free to credit the testimony provided by Cullison.  We further note that the Commonwealth presented text messages between Long and Mininger arranging for the purchase and delivery of Fentanyl to the apartment shared by Mininger and Cullison hours before Mininger was found dead as a result of a Fentanyl overdose.  Accordingly, on this record, we discern no abuse of discretion by the trial court in denying Long's weight challenge.

In his second issue, Long contends that the trial court imposed an excessive and unreasonable sentence.  Long's claim presents a challenge to the discretionary aspects of his sentence.  We consider a challenge to the discretionary aspects of a sentence to be a petition for permission to appeal, as the right to pursue such a claim is not absolute.  ***See Commonwealth v. Rhoades***, 8 A.3d 912, 916 (Pa. Super. 2010).  Before we reach the merits of a challenge to the discretionary aspects of sentence, this Court must conduct a four-part analysis determining:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted).

Here, Long filed a timely notice of appeal. However, he failed to preserve his discretionary sentencing claim by raising it at the sentencing hearing or including it in his post-sentence motion. *See* Pa.R.Crim.P. 720. Accordingly, it is waived. *See Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) (holding that the failure to raise a discretionary sentencing claim at sentencing or in a post-sentence motion results in waiver).

Thus, as Long is not entitled to relief on either of his issues, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/11/2025

- 10 -